THOMAS B. HICKEY *vs.* CHARLES L. BAINE.
CHARLES P. MURRAY *vs.* CHARLES L. BAINE.

Suffolk.   March 11, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Mandamus.*

The general executive board of an unincorporated national union or organization of boot and shoe workers, to whom was given by the constitution the management and control of the government of the organization subject to the final and complete control of a convention of delegates from all the local unions, after an election of officers, considered majority and minority reports of a board of election inspectors and ordered a new election. A candidate who contended that the majority report of the election inspectors, which declared him elected, was final under the constitution and that the general executive board had no power to order a new election, was *held* not to be entitled, without prosecuting an appeal from the action of the general executive board to a convention of the organization, to maintain a petition for a writ of mandamus directing the general secretary to issue to him credentials of his election, he not having exhausted his remedy within the organization.

TWO PETITIONS for writs of mandamus directing the defendant, the general secretary-treasurer of the Boot and Shoe Workers Union, to issue to the petitioners certificates of their election as general president and general vice-president, respectively, of that organization, filed November 8, 1906.

There was a hearing on the petitions, answers and evidence introduced by both parties before *Morton*, J., who reserved and reported the cases upon the pleadings and a statement of facts by him for determination by the full court.

In view of the decision, the following only of the facts alleged in the petitions and answers and statement of facts are material:

The petitioners and the respondent were members of the

Boot and Shoe Workers Union, a voluntary national organization "composed of male and female boot and shoe workers organized in local unions or as members at large." In the constitution of the organization appear the following:

Under the heading "Government,"

"Section 3. The government of all local unions and members shall be vested in this general union as the supreme head, to which all matters of general importance shall be referred and whose decision shall be final.

"The administrative power of this general union, when not in convention, shall be vested in the general officers, subject to control of joint action of the general executive board. . . ."

Under the heading "General Officers — Duties,"

"Section 4. The general officers of this general union shall be a general president, a general vice-president, and a general secretary-treasurer.

"These officers shall at all times be subject to the control and instruction of joint action of the general executive board."

Under the heading "General President,"

"Section 5. The general president shall be the chief executive officer of this union.

"He shall enforce the laws, decide all constitutional questions (subject to an appeal to the general executive board), be *ex-officio* member of all committees and boards . . . report in detail to the general executive board. . . .

"He shall be paid two thousand dollars per annum and all legitimate expenses."

The general vice-president was to perform all the duties of the general president in case of his death, resignation or removal from office, and, when called upon by the general president, perform such duties as might be assigned to him. His salary was $1,800 per annum.

The general secretary-treasurer had the usual duties of such an office, and was to "keep all records of conventions and of the general executive board, . . . be *ex-officio* a member of all committees and boards . . . issue all credentials, . . . perform such other duties as this constitution or the general executive board may assign, and be responsible to the general executive board for efficiency of his office administration."

Under the heading "General Executive Board," it is provided that such board shall "hold all property as trustees, have power to require of any officer full detailed statements of the business of the office, have power by majority vote to remove any officer for unfaithfulness or incompetency, hire suitable headquarters as directed by union, decide appeals from decision of general president, decide all questions of usage wherein the constitution is silent, issue and revoke charters, levy assessments when they deem it necessary, perform such other duties as this constitution may provide, and at all times consider the welfare of the organization superior to persons and places in arriving at decisions."

Under the heading "Election of General Officers, General Executive Board and General Auditors," it is provided that such officers "shall be elected annually by a popular vote. The candidate receiving the largest number of votes shall be declared elected." Under the same heading occur the following:

"Section 19. During August the general executive board shall select three local unions, each of which unions shall elect by written ballot one member in good standing who is not a candidate for any national office, to serve as general inspectors of election. Each union so selected shall notify the general secretary-treasurer of the name and address of the member elected, and shall give the member a certificate of election to be presented at headquarters.

"Section 20. The general inspectors of election shall meet . . . the Monday after election, and in the presence of each other open the envelopes or boxes containing the votes, etc., and proceed to count the ballots, and at 10 A. M. on the second Monday after election they shall declare the polls closed, ascertain and verify the result of the election, and they shall at once prepare a report of the same to be submitted to the local unions by the general secretary-treasurer. They shall place all votes, etc., together with a copy of their report, in a box, which shall be closed and sealed by them, and kept at headquarters, subject to the order of the general union.

"The report of the general inspectors of election shall be forwarded to the local unions within ten days after the result is announced.

" Any candidate may demand and receive a recount upon the petition of one joint council or five local unions, provided such petition is presented within thirty days after announcement of the general inspectors of elections.

" Candidates for general president, vice-president, secretary-treasurer and general executive board may have one representative present during the recount of the ballots. . . ."

" Section 21. All officers shall be installed by mail and take office on the first of the month succeeding the completion of the election."

A "joint council" is a council composed of delegates from local unions in one city or town.

Under the heading " Appeals,".

" Section 106. Appeals against the decision of any officer, committee, board, union or council shall be presented in writing to the next highest authority, and no appeals shall be considered unless the appellant conforms to the decision appealed from, pending decision on the appeal."

Under the heading " Conventions,"

" Section 108. A convention shall be called for the third Monday in June, provided a majority of all local unions have in the preceding January, voted in favor of holding same, and special conventions may be called at any time on official vote and request of a majority of all local unions."

Paragraph 3 of section 20, quoted above, was first adopted by a convention of the organization in June, 1906. As originally reported to the convention, there were added at the end of the paragraph the following words, " provided such joint council or five local unions can furnish sufficient evidence to the general executive board justifying the recount," but this was objected to and finally stricken out by the convention and the paragraph as given above adopted.

The defendant was the general secretary-treasurer of the organization.

On September 13, 1906, elections were held in the various component local unions. At these elections John F. Tobin and Thomas B. Hickey, the petitioner, were the only candidates for president, and Collis Lovely and Charles P. Murray, the petitioner, were the only candidates for vice-president, and these four

were all members of the union, qualified to serve as president and vice-president, if elected. The ballots cast at the local unions were sent to the general offices in Boston, and there came into the hands of Michael H. Lydon, Edgar V. Lucas and Walter H. Edmonds, who were, at the time of the returns of these votes, the lawfully constitued board of inspectors of elections, provided for by section 20 of the constitution. This board met in accordance with section 20 and voted by a majority vote to make a report to the general secretary-treasurer declaring the petitioners elected general president and general vice-president respectively. Michael H. Lydon, who voted against the making of such report, sent to the general secretary-treasurer a " minority report " setting forth various irregularities in the election, particularly as to local unions numbered 44 and 192, and stating:

" If this ballot is to stand, I would throw out the entire vote of Unions No. 44 and No. 192 as being the most flagrant cases of wholesale fraud, and would declare the following results:

" For General President — John F. Tobin received 4965 votes; Thos. B. Hickey received 4637 votes. John F. Tobin having received the highest vote is hereby declared elected.

" For General Vice-President — Collis Lovely received 4636 votes; Chas. P. Murray received 4299 votes. Collis Lovely having received the highest vote is hereby declared elected."

His report closes

" I hereby appeal to the general executive board, that they may take notice of the many irregularities as discovered by the inspectors of election, and adopt the minority report; or, what might be better still, to immediately take steps to the end that a new election be held, so that the wishes of the members may be clearly understood."

The general secretary-treasurer sent letters to all the local unions enclosing copies of both reports and stating that the general executive board would meet at Boston on October 24, 1906, " for the purpose of considering and taking action on the two reports submitted by the general inspector."

On October 23, 1906, the petitioner Hickey addressed the following letter to the general executive board:

" Gentlemen: General Secretary-Treasurer C. L. Baine has

notified the local unions that the general executive board will hold a meeting in Boston commencing Wednesday, October 24th for the purpose of considering and taking action on the two reports submitted by the general inspectors.   There have not been two reports submitted by the general inspectors.   The constitution provided that they shall ' prepare a report.'   It does not provide for the submission of two reports by them, and a so-called minority report of the dissenting members is not a report of the general inspectors.

" The general executive board has no authority to pass upon, revise or affect in any way the report of the general inspectors of election; and if you attempt to interfere with or nullify in any way the report of the general inspectors of election, I will invoke the aid of the courts to protect and inforce my rights, and the rights of the people who have elected me general president of the Boot and Shoe Workers' Union."

The general executive board held its meeting on October 24 and 25, 1906, the two reports from the general inspectors of election and the letter from the petitioner Hickey were read and, the candidates Tobin and Lovely having authorized a statement to the board that they would abide by any decision that the board might make other than declaring them, Tobin and Lovely, elected to office, the board after extended deliberation voted to " sustain the appeal of M. H. Lydon and order a new election to fill the offices of general president and general vice-president, the same candidates to contest," and subsequently ordered such election to be held on December 6, 1906, giving notice to the local unions on October 29, 1906.   On the latter date the secretary of the general board of inspectors wrote to the petitioner Hickey as follows :

" Dear Sir : A canvass of national election of 1906 by General Inspectors of Election shows that you have been elected President of the Boot and Shoe Workers Union.

" EDGAR V. LUCAS
" Secretary of General Insp. of Election."

He also sent a similar letter to the petitioner Murray.

On October 27, 1906, due demand supported by petition for a recount of votes of the election was filed with the executive

board by one Prout, a candidate for the executive board, who had been declared not elected, and between November 2 and November 6 such demands supported by petitions were made by Tobin and Lovely.

On November 1, 1906, the petitioners respectively demanded from the respondent proper credentials of their election, and such credentials were refused.

*H. Parker*, (*J. W. McAnarney* with him,) for the petitioners.

*L. D. Brandeis*, (*E. S. Goulston* with him,) for the respondent.

SHELDON, J. If we assume that a writ of mandamus may properly be issued to secure possession of such offices as are here in question, and that these petitions could be brought against the respondent alone although this would involve passing upon the rights of Tobin and Lovely without their being made parties or having any opportunity to be heard, yet we are of opinion that the petitions cannot be maintained.

The rights of all the members of this voluntary association must be settled according to the provisions of the constitution which they have adopted. *Reynolds* v. *Royal Arcanum*, 192 Mass. 150. Accordingly, before these petitioners can invoke the aid of the court to secure them in the offices to which they severally claim to have been elected, it must be shown that they have exhausted the remedies available to them within the association and according to its rules. *Oliver* v. *Hopkins*, 144 Mass. 175. *Karcher* v. *Knights of Honor*, 137 Mass. 368. *Chamberlain* v. *Lincoln*, 129 Mass. 70. The general inspectors of elections have counted and passed upon the ballots cast at the election at which the petitioners claim to have been elected, and have made a majority and a minority report thereof. The general executive board have passed upon these reports, and have ordered a new election. The power of the board to take this action under the circumstances of these cases is disputed, and has been argued with much learning and at considerable length. But we have not found it necessary to pass upon this question; for if the action of the board was wrong, whether because they had no jurisdiction of the question or because they took an erroneous view of either the law or the facts, there was a further remedy open to the petitioners under the constitution by appeal under § 106 to a convention to be held under § 108. It is impossible to read

this constitution without seeing plainly that it was intended and purported to supply a full system of government by which the rights of all its members and the rights and duties of all its officers among themselves should be determined and regulated, under the management and control of the general executive board, which, according to § 8, is to decide all questions of usage wherein the constitution is silent, but with a final and complete control in a convention to be held, subject to the desire of a majority of the local unions, in June of each year, or at any other time, upon vote of such a majority. In our opinion, according to the decisions above cited, it was the duty of the petitioners to exhaust their remedy by appeal to such a convention before coming into the courts.

*Petitions dismissed.*