FRASER et al. v. BUCK et al. (No. 8110.)

(Court of Civil Appeals of Texas. Galveston. June 16, 1921. Rehearing Denied Oct. 20, 1921.)

1. Associations ⬤⟹20(1)—When courts will interfere with internal affairs.

The courts will not interfere with the internal affairs of an unincorporated association so long as the government of the society is fairly and honestly administered in conformity with its laws and with the law of the land, and no property or civil rights are invaded, but proceedings of an association are subject to judicial review where there is fraud, oppression, or bad faith, or property or civil rights are invaded, or the proceedings in question are violative of the laws of the society or the law of the land, or are illegal.

2. Associations ⬤⟹20(1)—Members of association must exhaust remedies before applying to court.

If the laws of an association provide tribunals for settlement of questions arising between members, or between members and the association, such tribunals must be appealed to before the question or dispute can be taken into the courts.

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Suit by R. H. Buck and others against W. A. Fraser and others. From an order granting a temporary injunction, defendants appeal. Reversed and rendered.

Wolters, Storey, Blanchard & Battaile, of Houston, De E. Bradshaw, of Omaha, Neb., and S. M. Adams, of Nacogdoches, for appellants.

Garrison, Pollard, Morris & Berry, of Houston, for appellees.

PLEASANTS, C. J. This appeal is from an order of the district court of Harris county granting a temporary injunction in a suit brought by appellees against the appellants to recover for some of the plaintiffs against some of the defendants the title and possession of certain offices in the organization known as the Head Camp, Woodmen of the World, jurisdiction of Texas, and for other of the plaintiffs against other of the defendants the office or position of delegate from said Head Camp to Sovereign Grand Camp in said organization, and to enjoin the de-

fendants from attempting to exercise the duties of said offices and positions.

On consideration of the petition the court below granted a restraining order on the 10th day of March, 1921, and set the hearing for March 19, 1921. Upon a hearing on the day set all of the defendants appeared by attorneys and presented a plea in abatement and motion to dissolve the restraining order theretofore issued. After considering the pleadings and affidavits submitted in support thereof, the court overruled the plea in abatement and granted a temporary injunction against the defendants John T. Yates and W. A. Fraser, 'as' Sovereign Camp officers, and W. C. Cox, Earl Baird, and Arthur A. Seale as Head Camp officers, restraining them from certifying or reporting or referring to the Sovereign Camp, Woodmen of the World, the names of the defendants as delegates from Head Camp, jurisdiction of Texas, and further enjoined the defendants who claimed to be elected officers of the Head Camp, jurisdiction of Texas, from exercising or attempting to exercise any power, jurisdiction, or authority as such.

The material allegations of plaintiffs' petition are in substance as follows:

"That all of the plaintiffs and all of the defendants except John T. Yates are members of the Head Camp, Woodmen of the World, jurisdiction of Texas; that the Sovereign Camp, Woodmen of the World, is a corporation, incorporated under the laws of the state of Nebraska, headquarters at Omaha; that W. A. Fraser is the Sovereign Commander thereof and John T. Yates is the Sovereign Clerk thereof, and that W. C. Cox, prior to the 10th of March, 1921, was the Clerk of the Head Camp of the jurisdiction of Texas and claims to be reelected to said office; that the offices of the Head Camp, Woodmen of the World, are remunerative offices, each and all of the holders thereof being paid compensation in money for services rendered; that the delegates to the Sovereign Camp, Woodmen of the World, each receives a compensation averaging the sum of $20 per day and 15 cents per mile; that the delegates to the Head Camp, jurisdiction of Texas, regularly met in the city of Houston on the 8th day of March, 1921, for the purpose of electing Head Camp officers and delegates to the Sovereign Camp, and that said delegates and officers were elected by ballot, and that there was a contest amongst the delegates as to who should be elected to said offices and as said delegates; that on the 9th day of March, 1921, said Head Camp proceeded to elect officers by ballot, and that the ballot box in which said ballots were deposited was located in front of the stage at the Auditorium in the city of Houston in view of all the delegates; that the plaintiffs, R. H. Buck and others, were candidates for offices in the Head Camp as well as the defendants Arthur Seale and others on said date; that the ballots were distributed; that each delegate in said Head Camp voted for his choice, and the election was declared closed; that the presiding officer instructed the Head Escort to take the box containing the ballots from the table in front of the stage, place it on top of his head, and bring it on to the stage, and in obedience to said order said Head Escort took said box containing the ballots from the table in front of the stage, and as he was instructed to do, and proceeded to go upon the stage with it by passing through a room instead of taking said box, which was about four feet from the stage, and placing it on the stage in view of all the delegates; that during the time the said box containing said ballots was being carried from said table in front of the stage to the stage said Head Escort willfully, designedly, corruptly, and fraudulently permitted said box to be changed, and another box to be substituted in its place, and proceeded to carry the substituted box to the stage as the box containing the ballots of the delegates; that said substituted box contained fictitious and fraudulent ballots, and Head Escort was detected in the act of substituting said boxes; that said substitution was a fraud upon the delegates to said Head Camp that was perpetrated and attempted to be perpetrated in carrying out a well-organized scheme upon the part of the minority delegates, aided and assisted by the presiding officer, for the purpose of defrauding said delegates of the constitutional right to elect officers of their choice; that said Head Escort and the delegates and officers of said Head Camp, acting in conjunction with him, perpetrated said fraud for the purpose of selecting officers of said Head Camp who were the choice of the minority delegates, and said scheme was devised before said election of said parties so as to prevent and defeat the constitutional right of said delegates; that plaintiffs have now in their possession the ballot box containing the true ballots cast and also the box containing the fraudulent ballots, in the same condition in which they were at the time of said transfer; that the plaintiffs, R. H. Buck and others, on said date by the lawful ballots cast were duly elected officers of said Head Camp; that the count of said ballots will show that said plaintiffs were so elected, and said plaintiffs offer to the court said ballot boxes for the purpose of being opened; that thereafter, on the 10th day of March, 1921, said Head Camp duly and legally opened for business pursuant to adjournment, and after same had been opened, a quorum being present, by reason of the frauds and irregularities of the day before, a motion was made that the presiding officer, as being in the conspiracy in said fraud, permit an impartial man to preside over said meeting on said morning, which said request was refused by said presiding officer, whereupon a delegate in said Head Camp appealed from the ruling of said presiding officer, which said appeal was overwhelmingly sustained by the delegates of said Head Camp, whereupon said presiding officer and said minority delegates who had acted in concert with him in said fraud withdrew from said Head Camp, about 225 in all, leaving said Head Camp duly and legally assembled and transacting business with more than 700 legal delegates present; that said presiding officer and said minority delegates assembled at Magnolia Hall and proceeded to organize a separate and independent Head Camp and to elect the defendants named here-

in as officers of said camp and as delegates to the Sovereign Camp, being the same persons who had been defeated on the previous day for said offices and as said delegates; that thereafter the said Head Camp which was duly assembled, containing more than 700 of said delegates, proceeded to re-elect the officers which had theretofore been elected on the previous day, consisting of the plaintiffs named herein as officers of said Head Camp, and also proceeded to elect as delegates to the Sovereign Camp the plaintiffs named herein as such; that said officers and said delegates are the duly constituted officers of the Head Camp of the Woodmen of the World, jurisdiction of Texas, and are the legally, duly and qualified elected delegates of the Sovereign Camp, Woodmen of the World; that the purported Head Camp presided over by said presiding officer, J. B. Cochran, was illegal, in violation of the constitution and by-laws of the Sovereign Camp; that W. C. Cox, elected by said minority delegates as Clerk of the Head Camp, jurisdiction of Texas, refuses to certify the names of plaintiffs as delegates to the Sovereign Camp as required by the constitution and by-laws, but is threatening to certify the names of the defendants claiming to have been elected by said minority delegates as such delegates to the Sovereign Camp; that, unless the certification of the election of plaintiffs as said delegates contains the impress of the seal of the Head Camp, they could not be seated as such delegates under the constitution and by-laws; that, in order for plaintiffs to be seated as delegates of the Head Camp to the Sovereign Camp, their names must be certified by said defendant W. C. Cox to the defendant John T. Yates, Clerk of the Sovereign Camp, who in turn certifies their names to the defendant W. A. Fraser, who in turn certifies their names to the appropriate committee of the Sovereign Camp; that said defendants W. C. Cox, John T. Yates, and W. A. Fraser are attempting in concert with the minority delegates to deprive these plaintiffs of their constitutional rights as delegates by refusing to certify to the appropriate officers and committees of the Sovereign Camp the names of said plaintiffs; that the acts and conduct of said minority delegates are in violation of the constitution and by-laws of the Sovereign Camp; that same was the result of a conspiracy of certain members of the Sovereign Camp and of the officers of the Sovereign Camp of the Woodmen of the World, and of the officers of the Head Camp, jurisdiction of Texas, for the unlawful purpose of continuing their existence in office, and continuing in force and effect certain unlawful rates of insurance imposed upon the members of the Head Camp throughout the entire jurisdiction, and for the purpose of electing certain Head Camp officers, in sympathy with said unjust and unreasonable rates, and for the purpose of continuing in office said Sovereign Camp officers; that said acts and conduct of said minority delegates in pretending to elect said Head Camp officers and said Sovereign Camp delegates was fraudulent, unlawful, and void; that said officers pretending to be elected are asserting the right and title to said offices and the emoluments thereof, and have in their possession the funds belonging thereto and the seal and properties thereof; that said Sovereign Camp delegates so illegally elected are claiming the right, power, and authority to represent the Head Camp at said Sovereign Camp, in violation of the rights, privileges, and duties to which plaintiffs are entitled, and in deprivation of their emoluments of office; that the plaintiff Julian La Crosse is the duly and legally elected Head Banker of the Head Camp of Texas, and entitled to the funds and books thereof, but the defendant Earl Baird has possession of same and refuses to deliver same; that the plaintiff R. L. Hogan is the duly elected Head Clerk of said Head Camp and entitled to the seal, books, and papers thereof, but same are in the possession of the defendant W. C. Cox, who refuses to deliver same; that all of said funds, books, seals, documents, etc., are in the possession of said defendants; that the offices of the Head Camp of Texas all have a pecuniary value; that plaintiffs are entitled to receive the pecuniary emoluments of said offices and the civil rights thereof and to administer the affairs thereof; that for the defendants to exercise the rights of said offices and administer the affairs thereof, and act as delegates thereof, would result in serious injury to the Head Camp and serious pecuniary injury to the Sovereign Camp, and to each and all of the members of the Woodmen of the World; that under the constitution of said Sovereign Camp it is provided for the payment of funeral benefits, policies of insurance, and that each of the plaintiffs holding policies of insurance in said society are entitled to said funeral benefits; that the officers elected by the Head Camp in conjunction with the delegates by said Head Camp, and in conjunction with certain other officers of the Sovereign Camp, elect the Sovereign Camp officers, which said Sovereign Camp officers constitute the executive council of said Sovereign Camp; that said executive council exercises the power to fix rates and terms and conditions of insurance policies, the times when same shall be paid, and exercises management and control of the funds of the Woodmen of the World and any investment thereof; that the previous and present management of said society has not been satisfactory to the members thereof, and its continuance will endanger the funds thereof and endanger the insurance business thereof and deprive plaintiffs and all other members of the Sovereign Camp, Woodmen of the World, of valuable property rights in the matter of rates of insurance, terms of policies, funeral benefits, etc.; and that the acts of the defendants, if permitted to stand, will endanger the proper and economical management and investment of the funds of the Sovereign Camp. The plaintiffs pray that upon final hearing they have judgment decreeing the title and emoluments of the offices to them and divesting same out of the defendants, and the plaintiffs, as delegates pray that upon final hearing the title and the emoluments of the office of delegates to the Sovereign Camp be decreed to them and divested out of the defendants, and that the court issue its mandatory injunction in accordance with said prayer, and that pending final trial temporary restraining orders be issued in accordance," enjoining defendants

from exercising the powers and duties of said offices and positions in the respects indicated by the order of the camp granting the injunction.

The sworn plea in abatement filed by the defendants contains the following averments:

"That the officers of the Head Camp and the delegates of the Sovereign Camp receive no compensation, emoluments, or pecuniary benefit.

"That the officers of the Head Camp have no duties to perform during the interim between the adjournment of the Head Camp at which they are elected and the convening of the succeeding Head Camp two years thereafter.

"That the Head Camp owns and holds no property of any kind or character; that the Head Clerk has no books or records; that the only records he ever deals with are the minutes of the proceedings of the Head Camp; that the Head Banker is the custodian of no funds, except when the Head Camp meets the Sovereign Camp allots a sufficient sum to the Head Camp to defray the expenses of the session of the Head Camp and its delegates, which sum is paid out to the delegates per diem and mileage upon the adjournment of the session; that the officers of the Head Camp assess and collect no dues or fees.

"That the defendant W. A. Fraser is the Sovereign Commander of the Sovereign Camp of the Woodmen of the World, and as such has no connection with and no functions to perform in the deliberations of the Head Camp, and has no right as Sovereign Commander to participate in the discussion before the Head Camp, except by permission of the Head Camp, although he has the right to be present at its sessions by virtue of his office. The defendant W. A. Fraser resides in the city of Omaha, state of Nebraska, and does not reside in the state of Texas; that he performs the duties of his office as Sovereign Commander of the Sovereign Camp of the Woodmen of the World at the home office of the Sovereign Camp in the city of Omaha in the state of Nebraska.

"That the defendant John T. Yates is the Sovereign Clerk of the Sovereign Camp of the Woodmen of the World, and resides in the City of Omaha, state of Nebraska; that the said defendant Yates, as Sovereign Clerk, has no membership in the Head Camp of the jurisdiction of Texas, and, though permitted under the constitution and laws to be present, has no right to participate in the discussions and deliberations of the Head Camp. He performs his functions as Sovereign Clerk at the home office of the Sovereign Camp in the city of Omaha, state of Nebraska.

"That Head Consul Jerome B. Cochran did preside at all meetings of the Head Camp of the state of Texas during the month of March, 1921, and he did act as judge of the elections, and he did declare the results, and he did certify the result of said election to W. A. Fraser, Sovereign Commander, and to the Sovereign Executive Council and to the Credentials Committee of the Sovereign Camp.

"That there is no provision of the constitution, laws, and by-laws of the Sovereign Camp of the Woodmen of the World requiring the defendant John T. Yates, as the Sovereign Clerk, or the defendant W. A. Fraser, as Sovereign Commander, to certify to the Sovereign Camp the result of the election of any Head Camp officer, or of the election of any delegate to the Sovereign Camp, and there is no provision of said constitution, laws, and by-laws requiring the defendant W. A. Fraser to make any certificate or to certify to any minutes, proceedings, or the result of any election to the Sovereign Camp.

"That the defendant W. C. Cox does not have in his possession or under his control any books, property, or records belonging to the Head Camp of the Woodmen of the World of the state of Texas; that he only has in his possession minutes of the proceedings of the Head Camp session held in the city of Houston 1921. A copy of said minutes of proceedings are hereto attached, marked Exhibit A, and made a part of this plea in abatement.

"That the defendant Earl Baird, as Head Banker of the Head Camp of the Woodmen of the World of the state of Texas, does not have in his possession or under his control any moneys, funds, or property of any character belonging to the Head Camp of the Woodmen of the World of the state of Texas, and he did not have at the time of the institution of this suit, nor since said date, any funds or property in his hands or possession belonging to the Head Camp of the Woodmen of the World of the state of Texas.

"That the defendant Arthur Seale, as Head Consul elect, did not have at the time of the institution of this suit, has not now, and never has had in his possession any funds or property of any character belonging to the Head Camp of the Woodmen of the World of the state of Texas.

"That the other Head Camp officers mentioned in the pleadings have not now, and did not have at the time this action was instituted, any property of any character whatever belonging to the Head Camp of the Woodmen of the World of the state of Texas."

The pleadings further show that the Sovereign Camp of Woodmen of the World is a voluntary benevolent association having a lodge system, ritualistic form of work, and representative form of government. Its government consists of a supreme lawmaking body known as the Sovereign Camp, and subordinate bodies or lodges known as Head Camps of the many jurisdictions, and local camps, in the order named; and for the government, control, and regulation of the Sovereign Camp, Head Camp, and camps aforesaid the Sovereign Camp has promulgated and enacted constitution, laws, and by-laws, which in their amended and existing form became effective December 31, 1919.

Section 2 of the constitution, laws, and by-laws of the Sovereign Camp, to which all members subscribe and assent, and by which they agree to be bound in becoming members, reads as follows:

"The Sovereign Camp shall have original and appellate jurisdiction in all matters pertaining to the general welfare of this society. It may entertain and determine charges against

any of its members and all other matters of controversy which may be brought to it on appeals from camps, Head Camps and the Sovereign Executive Council, and its decision shall be final. It shall issue and may revoke charters to camps. It shall have the power to enact laws for its own government, the government of its Head Camps and camps, and for the control and management of the business of this society generally, and to provide penalties for the violation thereof. It shall have power to prescribe the rights, privileges, duties, and responsibilities of itself, its camps and Head Camps, and the membership of this society, and to finally determine the same. It shall prepare and publish the rituals and ceremonies of this society. It shall have the power to provide for the levy and collection of assessments, premiums, and dues on its members, necessary to pay all beneficiary claims and expenses of management, and shall have generally such powers and may perform such duties as it may deem wise for the welfare of the society, and to establish the rights and perpetuity of this society. It shall be the sole judge of the election and qualification of its own officers and members, and shall establish rules for their government, and may by itself or through its Sovereign Executive Council suspend or remove any officer or member for cause."

Section 29 (a) provides:

"The Sovereign Camp shall be composed of its elective officers, Head Consuls, Junior Past Head Consuls of Head Camps and delegates from Head Camps."

Section 4 provides for the officers of the Sovereign Camp, and says that they shall constitute the Sovereign Executive Council, also known as the Board of Directors.

Section 10 (a) provides:

"The Sovereign Commander shall supervise the affairs of the society and shall discipline and dispose of charges against camps and Head Camps for violation of the laws of society or appeals from decisions of the same"

—and further that its decision shall be final and binding upon all officials and members, unless reversed by the Sovereign Executive Council or Sovereign Camp.

Section 10 (e) provides:

"He shall discipline camps and have power to arrest or revoke charters for deviating from the ritualistic work, for refusing to obey the constitution and laws of this society, for disseminating communications or circulars derogatory to this society or its officers or soliciting contributions when not authorized by him, instituting suits or legal proceedings against the Sovereign Camp or any of its officers without first submitting grievances or complaints to the Sovereign Executive Council for adjudication, for authorizing or inciting newspaper publications which tend to injure or bring reproach or disrepute upon this society or its officers, or failing or refusing to prefer charges against any member of a Camp and trying and punishing him if found guilty according to the laws of this society governing same, who has been guilty of any of the above law violations, or other conduct likely to breed within it discord and discontent. For these offenses or any of them the camp may be suspended, or its charter arrested or revoked, in which event the members of any such camp to maintain good standing in this society shall pay their assessments and dues to the Sovereign Clerk until the matter shall finally be determined by the Sovereign Executive Council, if appeal is taken, and until such time the action of the Sovereign Commander shall be conclusive."

Section 26 (a) provides:

"All power and authority of the Sovereign Camp, when not in session, shall be vested in the Sovereign Executive Council, except as herein provided."

[1] We have been aided in the determination of the questions presented by this appeal by able briefs filed by the attorneys representing the respective parties, and we find little or no disagreement between counsel upon the general rule of law governing suits of this character. The rule is thus stated in Corpus Juris, vol. 5, p. 1364:

"The courts will not interfere with the internal affairs of an unincorporated association so as to settle disputes between the members, or questions of policy, discipline, or internal government, so long as the government of the society is fairly and honestly administered in conformity with its laws and with the law of the land, and no property or civil rights are invaded. Conversely the proceedings of the association are subject to judicial review where there is fraud, oppression, or bad faith, or property or civil rights are invaded, or the proceedings in question are violative of the laws of the society, or the law of the land, or are illegal. Even in these cases, however, the courts will not take jurisdiction unless the complaining member has exhausted such remedies as may be provided by the laws of the association itself."

The authorities are practically unanimous in the support of this rule.

The rights of all members of voluntary associations of this character must be settled in accordance with the rules and laws of the association which the members have adopted or to which they have agreed by becoming members, unless such rules or laws violate the laws of the land or are inadequate to protect the member in his property or personal rights, and resort cannot be had to the courts until the remedy provided by the laws of the association has been exhausted.

[2] If the laws of an association provide tribunals for settlement of questions which may arise between members affecting the rights of the members in their relation to the association and to each other as members of the association, such tribunals must be appealed to before the question or dispute can be taken into the courts. The wisdom and justice of this rule cannot, we think, be questioned, and authorities in its support are al-

most innumerable. We cite the following as showing the application of the rule: Screwmen's Association v. Benson, 76 Tex. 552, 13 S. W. 379; Hickey v. Baine, 195 Mass. 446, 81 N. E. 201; Herman v. Plummer, 20 Wash. 363, 55 Pac. 315; Manning v. San Antonio Club, 63 Tex. 166, 51 Am. Rep. 639; Brown v. Harris County Med. Soc., 194 S. W. 1179; Gaines v. Farmer, 55 Tex. Civ. App. 601, 119 S. W. 874; O'Connor v. Morrin, 109 Misc. Rep. 379, 179 N. Y. Supp. 599.

It seems clear to us that the provisions of the constitution and by-laws before set out create at least two tribunals with ample powers to decide the questions in dispute between the plaintiffs and defendants in this suit and to give the plaintiffs full and adequate relief, and it was the duty of plaintiffs, under their obligations as members of the association, to appeal to these tribunals before resorting to the courts to settle the dispute.

The allegations of plaintiffs' petition, which, being undenied, must be taken as true, show the grossest fraud on the part of the defendants in the election held on March 9th for the election of officers of the Head Camp and delegates to the Sovereign Grand Camp, and further show that the plaintiffs are the duly and legally elected officers of the Head Camp and delegates to the Sovereign Grand Camp.

Section 2 of the constitution and laws of the association before quoted expressly confers upon the Sovereign Camp both original and appellate jurisdiction in all matters pertaining to the welfare of the society and to hear and determine charges against any of its members and all other matters of controversy that may be brought to it on appeal from camps, Head Camps, and the Sovereign Executive Council, and it is made the sole judge of the election and qualification of its members.

It cannot be doubted that these provisions give plaintiffs, who claim to have been elected delegates to the Sovereign Camp, the right to present their claim to such position to that tribunal, and that the plaintiffs who claim to have been elected officers of the Head Camp may complain to the Sovereign Camp of the action of the defendants, who are wrongfully assuming to hold said offices and to exercise the powers and duties thereof; and the Sovereign Camp has full power to hear and determine both of these matters and to give plaintiffs full and adequate relief by seating the duly elected delegates and prohibiting under the highest penalties of the order the wrongful assumption by the defeated candidates for offices of the Head Camp of the privileges and powers of such offices. We may add that it is inconceivable, upon the facts alleged in the plaintiffs' petition, that any self-respecting, honest, intelligent body could fail to grant plaintiffs relief, but in such event plaintiffs, having exhausted their remedy in the association, could appeal to the courts and obtain ample protection against any injury thereby illegally caused to their property rights or their rights and privileges as officers of the Head Camp. The same right of appeal and the same power to grant relief that is vested in the Sovereign Camp is conferred by Section 26a of the laws of the society before set out to the Sovereign Executive Council, when the Sovereign Camp is not in session.

Our conclusion is that the trial court erred in overruling the plea in abatement, and that the judgment should be reversed, and judgment here rendered dismissing plaintiffs' suit without prejudice to again appeal to the courts, after having exhausted their remedy in the association, to protect them in their rights of property or their personal rights and privileges as members or officers of the association in event such rights should be illegally invaded or denied by the action of the tribunals of the association.

Judgment will be so entered.

Reversed and rendered.

---

&⫌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes