WILLIAM CLARK *vs.* JOHN MORGAN & others.

Suffolk.    March 3, 1930. — April 15, 1930.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Equity Jurisdiction,* Suit by member to enjoin labor union's disciplinary action. *Unlawful Interference. Labor Union.*

The constitution of a labor union called a brotherhood provided that it should consist "of Local Unions and members subject to its laws and usages"; that each district council should have jurisdiction of offences against the laws of the union committed within its district by mem-

bers from other districts; that all charges should be made in writing specifying the offence and the section of the constitution violated; that any member who was guilty of improper conduct "or wrongs a fellow-member . . . or commits an offense discreditable to the . . . [union], shall be fined, suspended or expelled"; and that members aggrieved by the action of the district councils in dealing with offences should have certain rights of appeal to other officers and bodies of the union. The constitution also mentioned certain trade rules and prescribed penalties for their violation. Neither such trade rules nor the constitution in terms prohibited members from working on jobs after union members had been taken off by the union officials. Two district councils made an arrangement whereby members of either district might take employment in the other upon giving certain notice to the council of the other district. In a suit in equity by a member of one of such districts against the officers and members of the council of the other, a master found that the plaintiff went to work in the defendants' district without giving them the required notice, and continued to work until he was laid off by the employer, although he had learned of labor trouble between the employer and the defendants; that the defendants thereupon preferred against him the charge of "working on job after men were taken off by agent"; that the charge did not specify the section of the constitution alleged to have been violated; that the trial board found the plaintiff guilty and barred him from working in its district thereafter "until further action"; that he did not appeal from such decision; that it was justified by the plaintiff's violation of the agreement between the two councils, of which the plaintiff had knowledge; that the trial board acted in good faith; that the plaintiff attended the hearing and made no complaint as to the manner in which it was conducted or as to the omission from the charge of the section of the constitution alleged to have been violated; and that the plaintiff had waived that omission. The plaintiff admitted that he knew that continuing to work on a job where there was a strike would be a violation of the constitution and injurious to his fellow members. The plaintiff sought by his suit solely to have the defendants enjoined from interfering with his employment. The bill was dismissed. *Held*, that

(1) The offence charged against the plaintiff was not that he had violated one of the trade rules; and therefore the trade rules and penalties for their violation were immaterial in this suit;

(2) The finding, that the plaintiff had waived the requirement that sections of the constitution alleged to have been violated be specified in the charges, was warranted;

(3) The plaintiff had admitted an offence which, although it was not specifically prohibited by the constitution, violated it and was injurious to his fellow members and was within the jurisdiction of the defendants over offences committed within their district;

(4) Evidence, that by long usage or custom, the offence committed by the plaintiff could be punished by the district councils, properly was admitted; such evidence did not contradict the constitution;

(5) Even if the defendants had had no jurisdiction to act against the plaintiff, he, by failing to exercise his right of appeal, had not exhausted his remedies within the union and for that reason was not entitled to maintain the suit;

(6) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on January 8, 1927, and afterwards amended.

The suit was referred to a master. The bill and material facts found by the master are described in the opinion. By order of *Dillon,* J., there were entered an interlocutory decree confirming the master's report and supplemental report, and a final decree dismissing the bill. The plaintiff appealed.

*R. B. Owen,* for the plaintiff.

*L. A. Mayberry, (J. B. Abrams* with him,) for the defendants.

CARROLL, J. This is a bill in equity against the defendants mentioned by name and all other officers and members of the Boston district council of the United Brotherhood of Carpenters and Joiners of America, and the officers and members of the local unions. The United Brotherhood of Carpenters and Joiners of America, a voluntary labor organization, will be herein referred to as the brotherhood. It is subdivided into local unions which are also voluntary associations.

The bill recites that the plaintiff is a member of local union No. 831 of Arlington, Middlesex County; that from July, 1926, to October of that year he was employed by one Skelton; that he was at no time informed by the brotherhood or any local union affiliated with the brotherhood that there was any labor dispute between Skelton and the union; that he was paid union wages and worked under union conditions, and his "coemployees, so far as he knew, were union men in good standing"; that on or about the fifth day of December, 1926, he was notified by the district council of Boston to appear for trial, it being alleged that he worked for Skelton after "men were taken off the work by an agent of the said District Council or one of its affiliated Unions." It is further averred that the plaintiff appeared at the place and time appointed; that "it appeared that no steps had been

taken to notify him . . . or to request him in any way not to work for the said Skelton, and that he was notified that he would be informed as to the decision of the said trial board"; that he was not notified of such decision; that he at no time violated any laws of the union to which he had subscribed and he was ignorant of any dispute between Skelton and the union; that the defendants by their agents interviewed Fred T. Ley & Co., Inc. by whom the plaintiff was employed in December, 1926, and threatened that if that company did not cease to employ the plaintiff all union men affiliated with the union would cease to work for the Fred T. Ley & Co., Inc., and in consequence the plaintiff was forced to cease his employment. The bill also alleges that the plaintiff has been notified by the defendant Dunphy and others that he will not be allowed to obtain employment in Boston and vicinity; that he has been unable to obtain employment and has suffered damages.

The master states that the plaintiff had been and was at the time of the hearing a member of the brotherhood; that he was the financial secretary of local No. 831 of Arlington. This local belonged to the Middlesex district council. The Boston district council includes Boston, Cambridge and other cities and towns, but does not include the Middlesex district. In the year 1922, the Middlesex and Boston district councils entered into an agreement by which members of either district might take employment in the other district provided the member notified the council into which he was to come for employment of the name of his employer and the location of the job within twenty-four hours after he began work. Skelton, it seems, was erecting a building in Cambridge within the Boston district. The plaintiff went to work for him; he did not notify the Boston district council according to the agreement of the councils, although he was aware of its provisions, and "deliberately chose to withhold from the Boston Council the knowledge of his employment by Skelton for the purpose of averting the danger of being ordered off the job." "The plaintiff concedes that if he ever continued to work for Skelton, knowing that the latter was employing nonunion, as well

as union, carpenters on the Cambridge job, or that the job was struck because of that fact, he would be committing a serious offence against the organization and its laws." In the meantime, the plaintiff learned of the labor trouble between Skelton and the Boston council, but continued to work until laid off by Skelton.

In December, 1926, when the district council learned of the plaintiff's "former connection with the Skelton job," charges were preferred against the plaintiff. He was duly notified of the charges, the time and place of trial, and the tribunal before which he was to appear. The master found that the plaintiff appeared, was fairly tried and given every reasonable opportunity to defend himself and produce his evidence; he was adjudged guilty. The findings of the trial board were referred, according to the usual procedure, to the district council; that board sentenced him to pay a fine of $10 and barred him from working in its district "until further action." The findings of the master show that all the proceedings were pursuant to the laws and well established practice of the brotherhood. It was found that the part of the order barring the plaintiff from working in the district was justified by his violation of the reciprocal agreement; that the plaintiff, early in December, again came into the district and found a job with the Ley company; that he neglected to give the notice required by the reciprocal agreement; that when he discovered that it was known he was working in the district "he voluntarily left the job" because he did not wish to cause trouble to himself or the Ley company; that he did not appeal from the decision of the trial board or "seek redress within the confines of the union before he brought this suit"; that the "defendants acted without malice and entirely within their rights"; and that the enforcement of the part of the order barring the plaintiff from employment was confined "exclusively in their own district." In the Superior Court the bill was dismissed; the plaintiff appealed.

The plaintiff alleges that he is a member of the brotherhood and of local No. 831. The legality of the strike on the Skelton job is not questioned. The plaintiff says in his

brief that he does not seek relief from the fine imposed on him, and his suit is not brought "for the purpose of in any way obtaining relief through the courts from any action of the Brotherhood looking towards an alteration in the relations of the plaintiff to the Brotherhood such as expulsion or suspension, but is brought for the purpose of obtaining an injunction against and damages for interference with the plaintiff's employment." It is therefore unnecessary to discuss the question of the legality of the fine imposed on the plaintiff. *L. D. Willcutt & Sons Co.* v. *Driscoll,* 200 Mass. 110, 126. See G. L. c. 180, § 19. *W. A. Snow Iron Works, Inc.* v. *Chadwick,* 227 Mass. 382, 392. The plaintiff's contention is that the defendants illegally deprived him of employment in the district over which the brotherhood had jurisdiction; that as a member of the union he has the right to contest that action in the courts without exhausting the remedies within the union. The plaintiff knew of the agreement between the Boston and Middlesex districts. As a member of the Arlington union he agreed to be bound by the rules of the organization and subjected himself to its discipline. *Ryan* v. *Hayes,* 243 Mass. 168.

One of the contentions of the plaintiff is that he was tried for the violation of a trade rule, and had a penalty imposed upon him not expressly or impliedly contained in the written laws of the district council. The trade rules mentioned in the constitution and by-laws of the council relate to the hours of labor, wages for work on Sundays and holidays, night work, the conduct of foremen and business agents, and to other regulations, specifying the penalties for their violation. The master found that the plaintiff was not tried for the violation of a trade rule; that it was not stated in the charges made that he had violated a trade rule. It was in fact charged that he had worked on the Skelton job "after men were taken off by agent." In our opinion the master was right in finding that the plaintiff was not tried for the violation of a trade rule. There is nothing in the trade rules making it an offence to work on a job after union members had been taken off. The charge made against the plaintiff was that he had violated the laws of the district

council "by working on job after men were taken off by agent on Skelton work." This was not a charge involving a trade rule as described in the constitution and by-laws of the district council.

The brotherhood constitution requires that all charges are to be made in writing specifying the offence "and the Section of the Constitution and Laws of the United Brotherhood so violated." This section was not complied with as the particular section of the constitution alleged to have been violated was not mentioned. On this question the master found that the plaintiff attended the hearing, admitted that the charge was a punishable offence and at no time made any criticism because of the omission of the section of the law he was charged with violating. He participated in the trial. He knew the charges made against him and, according to his testimony, was "satisfied to rest . . . [his] case with the trial board . . . without any further action" and was "satisfied to abide by their decision." He admitted he had no complaint of the way the trial was conducted. He also admitted it was a well established custom of the affiliated unions that "no member shall go to work on any job of a contractor while the strike exists on any of his jobs." In these circumstances, the master was warranted in finding the plaintiff waived this provision of the constitution.

The district council, as we construe the laws of the organization, had jurisdiction of offences against the general laws committed within its jurisdiction by members from outside locals. It is true that the particular offence charged against the plaintiff is not specifically prohibited. But the constitution of the brotherhood enacted that any member who is guilty of improper conduct "or wrongs a fellow-member . . . or commits an offense discreditable to the United Brotherhood, shall be fined, suspended or expelled." The plaintiff was a member of the union. He testified that he knew no member should work on a job on which there was a strike, and he admitted that, according to the well known custom, it violated the constitution to work under such conditions if known; that it was injurious to his fellow

members to be so employed. As bearing on this question parol evidence was admitted against the plaintiff's objection and exception showing that by long established usage, universally acknowledged, the offence charged against the plaintiff could be punished by the brotherhood or its district councils: This evidence, in our opinion, was admissible, not to contradict the written constitution, but to show the universal usage or custom in dealing with such complaints as working with nonunion men or working for one against whom a strike had been called. See *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395, 403; *Bowen, Inc.* v. *G. R. Armstrong Manufacturers' Supplies, Inc.* 241 Mass. 444, 446; *Nickel* v. *Zeitz,* 258 Mass. 282, 286. Furthermore, the constitution provided in its first section that the brotherhood shall consist "of Local Unions and members subject to its laws and usages."

But even if the district council could not act, or the offence was not one for which the plaintiff could be barred from working in the Boston district, as a member of the union seeking to protect his rights as such, he should first exhaust the remedies given him by the organization before seeking relief in the courts. Section 55 of the brotherhood constitution provides for this, and by § 56 "A member who has a grievance or who has had an injustice done him in any way . . . may appeal to the General President for redress, subject to a further appeal to the General Executive Board" and a final appeal to the general convention. The plaintiff made no appeal from the decision of the district council and did not make use of the remedies given him by the organization. If, as he contends, he could not be barred from working in the Boston district or the Boston council could not try him for the offence charged, he had a grievance and an injustice was done him, and he should have proceeded under the rules of the organization and made use of the remedies thereby provided before seeking relief in the courts. *Correia* v. *Portuguese Fraternity,* 218 Mass. 305. *Crawford* v. *Nies,* 220 Mass. 61, 66. *Agrippino* v. *Perrotti,* 270 Mass. 55.

In *Hickey* v. *Baine,* 195 Mass. 446, it was said at page 452: "if the action of the board was wrong, whether because they

had no jurisdiction of the question or because they took an erroneous view of either the law or the facts, there was a further remedy open to the petitioners under the constitution by appeal." This language is applicable here. If the Boston district council had no jurisdiction to try the plaintiff or to bar him from its territory, or if for any reason he was deprived of his rights as a member by the action of the council, he had a remedy open to him under the laws of the organization.

*Berry* v. *Donovan,* 188 Mass. 353, *Hanson* v. *Innis,* 211 Mass. 301, *Shinsky* v. *Tracey,* 226 Mass. 21, and similar cases involving the rights of nonunion employees to be free from interference in their employments by the action of organized labor, are not applicable here, where the plaintiff is a member of the union and does not seek "an alteration in the relations of the plaintiff to the Brotherhood."

The interlocutory decree and the final decree dismissing the bill are affirmed with costs.

*Ordered accordingly.*