James DAVIS et al., Appellants

v.

**BROTHERHOOD RAILWAY CARMEN OF AMERICA, LOCAL 783 et al., Appellees.**

No. 12716.

Court of Civil Appeals of Texas.

Galveston.

Oct. 21, 1954.

Rehearing Denied Dec. 2, 1954.

See 272 S.W.2d 938.

Dent, Ford, King & Wickliff, and Roberson L. King, Houston, for appellants.

Bannon & Bannon, and A. J. Bannon, Houston, for appellees.

HAMBLEN, Chief Justice.

The following statement of the nature of this case is taken from appellants' brief: "Suit by James Davis, M. Sykes and Virgil Clay, Negro employees, carman class or craft, of the Southern Pacific Lines (T. & N. O. R. R. Co.) in Texas and Louisiana in Houston, Texas, in their own behalf and as representing a number of other Negro employees of the carman craft or class employed by the Southern Pacific Lines in Houston, against the Brotherhood Railway Carmen of America, Local 783, A. J. Solomon and R. R. Robbins, officers and members of said lodge, exclusive bargaining agent of the employees on the Line afore-mentioned of the Carman class, alleging breach of the statutory duty imposed by the national Railway Labor Act, 45 U.S.C.A. § 151 et seq., and alleging also discriminatory practices repugnant to the 5th Amendment, asking for injunctive relief against defendants, that they be enjoined from refusing plaintiffs and those whom they represent membership into Local 783, a local of the Brotherhood Railway Carmen of America which has limited its membership to white employees. Upon a trial before the court without a jury, the District Court rendered judgment for the defendants. The Brotherhood maintains Local 991 for colored and Local 783 for whites."

After an extended hearing, during which the trial court heard testimony of numerous witnesses, and received documentary evidence tendered by both litigants, the court entered the appealed from judgment, wherein are contained the following stipulations of counsel for the respective parties:

"That the Brotherhood of Railway Carmen of America had been duly certified the exclusive bargaining agent for employees of The Southern Pacific Lines, in Texas and Louisiana (T. & N. O. R. R. Co.) in the Carmen's craft or class, in accordance with the provisions of the Railway Labor Act, Amended, including each of the Plaintiffs to this action;

"That the Union Shop Contract of January 21, 1953, between said carrier and said employees, included the Plaintiffs in this action, and said contract did not discriminate against them in any manner;

"That the Charter of Lodge 991, Brotherhood Railway Carmen of America, was a bona fide Charter;

"That the Agreement (covering rates of pay and working conditions) between said carrier and System Federation No. 162, Railway Employees Department (AFL), effective September 1, 1949, covers said employees, including each of the Plaintiffs, and said Agreement does not discriminate against them in any manner;

"That membership in Lodge 783 is composed of white Carmen and Lodge 991, of colored Carmen; each Lodge having jurisdiction over their respective groups of Carmen, mechanics, apprentices and helpers;

"That Section 8, of the Union Shop Agreement, provides that the Brotherhood Railway Carmen of America shall be liable in the event that seniority and employment is terminated improperly and unlawfully through said Agreement, by the Brotherhood of Railway Carmen of America."

In addition to these facts, which were stipulated, the court made the following findings in support of the judgment rendered:

"1. That the Plaintiffs have not exhausted the remedies provided them in the by-laws and constitution of the Brotherhood of Railway Carmen of America before filing this action.

"2. That Plaintiffs have not complied fully or exhausted their remedies under the terms of the Union Shop Contract, or of the terms of the Agreement (covering rates of pay and working conditions) between the Brotherhood of Railway Carmen of America and said carrier.

"3. That Lodge 991 is a bona fide subordinate Lodge of the Brotherhood of Railway Carmen of America and is not subordinate to Lodge 783 or is its members or officers, dominated or discriminated against, by the members or officers of Lodge 783.

\* \* \* \* \* \*

"6. That Lodge 991 was organized by the colored Carmen, employed by said carrier, at the Houston point, and has jurisdiction over all said colored employees on said carrier in Houston, in the Carmen's craft or class, and their constitution provides that said Lodge can not be surrendered or dissolved by its membership so long as 7 members of said Lodge refuse to surrender same.

"7. That the Plaintiffs are not discriminated against as employees of said carrier or as members, officers, local chairmen, committeemen or delegates of the Brotherhood of Railway Carmen of America, nor are they segregated at such meetings or places of employment, and may and do visit freely with Lodge 783 and members of 783 visit freely with Lodge 991.

"8. That the Plaintiffs and members of Lodge 991 have the same universial transfer privileges as do the members of 783 or any other sub-ordinate Lodge in the Brotherhood of Railway Carmen of America; but the constitution of the Brotherhood of Railway Carmen of America prohibits its members from transfering from one Lodge to another when 2 or more Lodges are located at the same point, as is the case in the Houston shops.

"9. That seniority lists of all Carmen are posted according to their location and there is no segregation, or discrimination as to race, color, or creed on such lists against colored workers or these Plaintiffs.

\* \* \* \* \* \*

"13. That said Agreement between said carrier and Carmen covering rates of pay and working conditions does not give said organization the right to hire new employees or set up new apprentices in the Carmen's craft or class, but the carrier reserves that right and the right to require

reasonable qualifications for new employees and apprentices.

"14. That the applications made by Plaintiffs to Lodge 783, of the Brotherhood of Railway Carmen of America were not correctly filled in, and did not meet the requirements of the constitution of the Brotherhood of Railway Carmen of America, but notwithstanding the applications were referred to Lodge 991 and accepted."

■ The asserted lack of evidence to support these findings of the trial court form the basis of appellants' nine points of error. After a painstaking review of the record here presented, this Court concludes that the evidence before the trial court not only amply supports the findings made, but in large measure compels such findings. Without intending to unnecessarily extend this opinion, it is deemed appropriate to quote briefly from the testimony of five witnesses offered by plaintiffs, who, insofar as the complained of findings are concerned, constitute all of the witnesses offered in support of appellants' allegations:

The witness James Davis testified as follows:

"Q. The only thing, you applied for membership in this letter to 783 and they sent it to 991? A. Yes, sir.

"Q. That is your only complaint? A. That is the complaint I am making now.

"Q. That is your only complaint? A. That is the only one I have made so far.

"Q. Have you got another one? A. I may think of another one. I don't have any right now. (S.F. 29.)

"Q. O. K. And have you made a grievance that you thought that you have suffered— A. I haven't made any grievance. No, Sir, I haven't made any.

"Q. And have any of the members of the white local or white members of the carmen, 783, discriminated against you as a colored man? * * * A. Well, I would have to answer that in this way. When I made my application out, I offered it to Mr. Solomon and he refused to take it. If you would call that discrimination,—I would call it discrimination. If that would be then, then I would say and, other than that, I would say no. (S.F. 495, 496.)"

The witness Virgil Clay:

"Q. But you do remember that they did have an election and that they were certified to represent all the workers on the T & N O in the shops? A. Yes, sir.

"Q. Since that date, have you had a grievance of any sort on your own job? A. No, sir, I haven't had a grievance, but I went up to make a statement, however.

"Q. You made a statement, but you haven't— A. I haven't had a grievance, no, sir." (S.F. 55.)

The witness W. V. Daniels:

"Q. And do you know of any Negro working on that job that the Brotherhood of Railway Carmen of America have discriminated against? A. No, I don't.

"Q. Have they discriminated against you? A. No, sir, they haven't discriminated me." (S.F. 109.)

The witness W. V. Munson: "Q. I want to ask you that since the certification and the enactment of the A. F. of L. agreement, which is September the 1st, 1949, has there been any discrimination against you to the best of your knowledge because you are colored, by white employees, members of the carmen's craft since 1949? A. I don't remember any." (S.F. 500.)

The witness Willie Vernon Shaw: "Q. I will ask the question again. Has any white employee been benefited through the terms of the working agreement between the carrier and the lodge detrimental to your rights? A. I would say directly to me, no, but indirectly to others, yes." (S.F. 254.)

In addition, the documentary proof, consisting in part of the constitution and by-

150

laws of the various unions involved, establishes a comprehensive system of grievance adjustment within the schemework of the organizations themselves, no part of which had been invoked by any complaining party.

 The courts have consistently required aggrieved parties of unincorporated societies, such as those here involved, to exhaust remedies available to them by the machinery set up for that purpose within such societies. Fraser v. Buck, Tex.Civ.App., 234 S.W. 679; Sawtell v. Feser, Tex.Civ.App., 235 S.W. 960.

Aside, however, from that well-established rule of law, which in itself supports the judgment appealed from, the appellants before this Court have failed completely to prove any discriminatory act committed by appellees in which they have any justiciable interest. On the contrary, their complaints are expressed in generalities and abstractions, which, when reduced to their essence, amount to an assertion that the existence of two local unions, one with membership limited to Negroes, and the other with membership limited to members of the white race, though they be in all respects equal, constitutes discrimination, and an infringement of some constitutional right guaranteed to appellants. In such respect the case differs in no respect from that of Hainsworth v. Harris County Commissioners Court, Tex.Civ.App., 265 S.W.2d 217, recently decided by this Court, wherein the applicable rules of law are enunciated, and the authorities annotated.

Indeed, the appellants, while not citing the cases by style, appear to rely upon the recent decision of the Supreme Court of the United States wherein it is held that the segregation of children by color in public schools was violative of the United States Constitution. Brown v. Board of Education, etc., 347 U.S. 483, 74 S.Ct. 686. But in those cases, the Supreme Court did not hold, as appellants seem to infer, that segregation as such is discriminatory, but rather based its holding upon the fact that the minds of immature children were necessarily affected by any color differentiation, and that therefore segregation in that instance is in fact discriminatory. No such considerations are discernible to this Court in the present case.

The judgment is, therefore, affirmed.