## JOHNSTON v. DIVERSIFIED FRUIT FARMS, Inc.

No. 9503.

Court of Civil Appeals of Texas. Galveston. Feb. 10, 1931.

Dissenting Opinion Feb. 12, 1931.

Rehearing Denied March 19, 1931.

C. M. Kay, of Houston, B. C. Johnson, of Port Arthur, and Roy Johnson, of Galveston, for plaintiff in error.

McDonald & Wayman and H. E. Kleinecke, Jr., all of Galveston, for defendant in error.

LANE, J.

This was a suit by Floyd A. Johnston, plaintiff in error, against Diversified Fruit Farms, Inc., defendant in error, and M. S. Perez, to recover upon a series of six promissory notes executed by defendant in error on July 31, 1928, and payable to plaintiff in error and M. S. Perez. They were in the principal sum of $1,000 each and bore interest from July 31, 1928, at 7 per cent. per annum, payable semiannually, on December 31st and July 1st of each year, and contained the usual attorney's fees clause. Numbered from 1 to 6 inclusive, the first note became due on or before December 31, 1929, and the remaining notes became due on the 31st day of December of each succeeding year in their respective numerical order. Each of the notes contained the following acceleration clause: "This note is one of a series of notes and it is understood and agreed that the failure to pay this note either principal or interest on any of said series of notes promptly when due, or failure to pay any other indebtedness due the payee when promptly due, shall at the opinion of the holder, mature the full amount thereof on the entire series, as the case may be."

After alleging the execution and delivery of the notes substantially as above, plaintiff pleaded that after said notes were executed "he and defendant Perez had reached an agreement as to their partnership affairs after an accounting, wherein and whereby plaintiff owns a 60% interest in said notes and Perez owns a 40% interest therein; that under the terms of said agreement the said Perez duly authorized this plaintiff to act in all matters in handling the assets undisposed of, as more fully appears from the copy of such dissolution agreement hereto attached and marked Exhibit A for purposes of identification." He then pleaded default in the payment of interest due on the notes, and, further, that "plaintiff has exercised his option as to such partnership property to declare said notes due."

In the alternative, plaintiff pleaded, if mistaken in his right to declare all of said notes due, that defendant Perez had failed and refused to join him in declaring all of the indebtedness due; that he owned 60 per cent. thereof and declared his portion of said notes due because of default in payment of interest due July 1, 1929.

Plaintiff attached to his petition, and made it a part thereof, a copy of an agreement which set forth the terms by and under which a former partnership existing between him and M. S. Perez was dissolved, and by which the assets of such partnership were divided between the two partners, the parts of which pertinent to the issues involved in this suit are as follows:

"The firm owns six promissory notes totaling Six Thousand Dollars ($6,000.00), now in the possession of Jas. W. Wayman as trustee for the parties hereto, 60% of which notes is owned by F. A. Johnston and 40% by M. S. Perez. * * *

"Each party agrees not to use the other's name in any future business transactions

363

without written consent except for the purpose of collecting accounts or disposing of assets as per this agreement.

"Each party is retaining in his possession certain of the working papers and reports covering work heretofore done, and it is agreed that if either should desire any such papers that are in the possession of the other in connection with work he may be called on to do, the papers will be available. It is understood that the papers will be returned to the party from whom they have been gotten after they have served their purpose."

Plaintiff's prayer was as follows: "Wherefore, * * * plaintiff prays for judgment for the amount of said notes, principal, interest and attorney's fees with award to him of his portion thereof; or, in the alternative, for judgment for the amount of his interest in said notes, principal, interest, and attorney's fees, with costs of court, and for such other and further relief as he may be justly due."

Defendant in error filed its plea in abatement, a general demurrer, and special exceptions, alleging, in substance, that it appeared from the face of plaintiff's petition that the only amount that could be due on the notes at the time this suit was filed was six months' interest, which is below the jurisdiction of the district court.

The trial court sustained the general demurrer of defendant, and, upon the declination of plaintiff to amend his pleadings, dismissed his suit and rendered judgment on defendant's cross-action for $154.

The plaintiff, Floyd Johnston, has appealed.

Appellant's contentions for reversal, when reduced to their ultimate, are: First, that he had the right, by reason of the provisions of the notes, to mature all of them upon the failure of appellee to pay the first installment of interest when it became due; and, second, that if he be mistaken in the conclusions first stated, he did have the right to mature his 60 per cent. interest in the notes upon such default being made by appellee; wherefore the court erred in sustaining the defendant's general demurrer to his petition; that, having pleaded such rights, the court erred in sustaining the general demurrer addressed to his pleadings.

We think appellant's contention should be sustained.

It is shown that appellant, Floyd A. Johnston, and M. S. Perez were engaged in business as partners; that while so engaged they sold to appellee, Diversified Fruit Farms, Inc., certain of the firm's assets, in part payment for which appellee, on the 31st day of July, 1928, executed and delivered to the firm six promissory notes, each for the sum of $1,000, bearing interest at the rate of 7 per cent. per annum, payable semiannually on the 31st of December and 31st of July of each year from the date of their execution. The first of the series of notes was payable on or before December 31, 1929, and the others in numerical order on or before December 31, 1930, and on the 31st of December of each succeeding year until all were paid. All of the notes, except to due dates, read as follows:

"$1000.00

"Galveston, Texas, July 31, A. D. 1928.

"On or before December 31, 1929, after date, without grace, for value received, I, We, or either of us, as principals, promise to pay to the order of F. A. Johnson, and M. S. Perez, at Galveston, Texas, the sum of One Thousand ($1,000.00) Dollars, with interest at 7% per annum, interest payable semi-annually, on December 31 & July 1, each year, from date until paid, together with an additional amount of 10 per cent. on both principal and interest, as attorney's fee if placed in the hands of an attorney for collection, or if collected through bankruptcy or probate proceedings.

"This note is one of a series of notes, and it is understood and agreed that the failure to pay this note, either principal or interest, or any of said series of notes promptly when due, or failure to pay any other indebtedness due the payee, promptly when due shall at the option of the holder, mature the full amount hereof, or the entire series, as the case may be.

"No. ——— of Series of 6 Notes.

"Due ———

"Diversified Fruit Farms, Inc.

"By [Signed] Peter M. Gengler, President."

On the 15th day of March, 1929, about nine months after the execution and delivery of the notes to the firm of Johnston & Perez by Diversified Fruit Farms, Inc., Johnston & Perez entered into a written agreement of dissolution of their partnership. By such agreement they disposed of a part of the assets of the firm, each taking certain named items of cash on hand, accounts, property, etc. the sixth, seventh, tenth, and eleventh sections of such dissolution agreement reading as follows:

"VI. The firm owns six promissory notes totaling Six Thousand Dollars ($6,000.00), now in the possession of Jas. W. Wayman as trustee for the parties hereto, 60% of which notes is owned by F. A. Johnston and 40% by M. S. Perez.

"VII. It is agreed that if the firm has done any work in the past now covered by the books or by any of the matters referred to above, whatever amounts may be received therefrom shall be divided, if and when collected, 60% to F. A. Johnston and 40% to M. S. Perez.

"X. Each party agrees not to use the other's name in any future business transactions without written consent except for the pur-

pose of collecting accounts or disposing of assets as per this agreement.

"XI. Each party is retaining in his possession certain of the working papers and reports covering work heretofore done, and it is agreed that if either should desire any such papers that are in the possession of the other in connection with work he may be called on to do the papers will be made available. It is understood that the papers will be returned to the party from whom they have been gotten after they have served their purpose." .

▌ The general rule which governs the construction of all contracts applies equally well to notes in so far as their construction is concerned. For instance, such rules as that the intent of the parties to the contract governs. A note, as any other instrument, must be construed as a whole so as to give effect to every part of it, if possible. In construing the notes involved in this. case we should look to the circumstances surrounding the parties thereto and ascertain therefrom and the language employed the obligations undertaken by the maker and the rights given the payee. At the time the notes were executed Johnston & Perez composed a firm. When appellee executed the notes and recited in each of them "it is understood and agreed that the failure to pay this note, either principal or interest, on any series of notes promptly when due, * * * shall at the option of the holder mature the full amount thereof on the entire series," it knew that it was executing and delivering them to two persons, Floyd A. Johnston and M. S. Perez, and notwithstanding such knowledge it specifically provided that the holder, Johnston & Perez, might at their option, under certain circumstances, mature all the notes through the declaration of either of said partners. Is it not clear, when looking to the circumstances as they stood at the time of the execution and delivery of the notes, that appellee, in the use of the word holder, meant Johnston & Perez, and meant at that time to confer said option upon an active member of the business firm? If so, can it be reasonably thought that because Johnston & Perez, after they took the notes, agreed as to what portion or part of the undivided notes each should own destroyed the right of the partners, or either of them, to mature all the notes in the event the default mentioned was made?

▌ A suit may be maintained by a partnership when its affairs have not been entirely settled, though it has been dissolved. American Cotton Co. v. Whitefield & Mitchell (Tex. Civ. App.) 88 S. W. 300; Traweek v. Pecos & N. T. Railway Co. (Tex. Civ. App.) 288 S. W. 843.

In construing any instrument, the court must consider the subject-matter; the object of making it; the sense in which the parties mutually understood it at the time it was made. It should be read by the light of surrounding circumstances in order to more perfectly understand the intent and meaning of the parties.

 If, however, we are in error in the conclusions above expressed, we are, nevertheless, of opinion that appellant had the right to mature all the notes by availing himself of the option given to him and his associate, Perez, by the terms set out in the notes. By the agreement of dissolution above mentioned it was agreed that the six notes involved in this suit were partnership property, owned jointly by the two parties, of which Johnston owned 60 per cent. and Perez 40 per cent., and by the tenth section of said agreement it is provided that, for the purpose of collecting accounts or disposing of assets, as per the agreement, either party may use the other's name in so doing. Thus appellant, Johnston, was constituted the holder of the notes for the purpose of collection, and as such holder he had the authority to mature all the notes upon default being made in the payment of the interest due thereon.

The case of Bomar v. West, 87 Tex. 299, 28 S. W. 519, 520, cited and relied upon by appellee to support its contention that appellant had no right to mature all of the series of notes involved in this suit upon default being made in the payment of interest due thereon, is distinguishable from this case in this: In that case one Skinner executed and delivered to Bomar five promissory notes payable one, two, three, four, and five years after their respective dates, and to secure payment of such notes Skinner executed and delivered a deed of trust on certain land. Such deed of trust provided that: "In default of the payment of said notes, or of either of them, that a foreclosure of said trust deed should be had at the instance of said D. T. Bomar, or the legal holder of said notes."

The first of the series of notes was transferred by Bomar to West Publishing Company, and the other four to one Callahan. Skinner failed to pay the notes transferred to West Publishing Company when due, and the trustee, at the request of that company, sold the land for the satisfaction of that note only. West Publishing Company became the purchaser at such sale. At the time of such sale the other notes were held by Callahan and were not due. In the suit by West Publishing Company against Bomar and others in trespass to try title, the plaintiffs prevailed. On appeal our Supreme Court held that the sale by the trustee did not pass title to the land to the West Publishing Company. The court said: "The limitation upon the power of the trustee to sell upon default in the payment of either of the notes at maturity is that he shall act upon the request of 'the holder of the notes.'" The court then says that it is of opinion that the language used in

the deed of trust does not mean that, in case of a transfer of the several notes to different holders, any one of them has the right to demand a sale without the consent of the others. It is then said: "Now, the power of a trustee to make a sale in such a case can only be exercised when there has been a compliance with the limitations imposed by the terms of the grant. The deed in trust not having provided that a holder of any one of the notes should have the right to demand a sale, we conclude that the trustee acted without authority, and that his sale passed no title."

In that case, the notes at the time of the sale were held by several different owners. In the present case, the notes were payable to the firm of Johnston & Perez, that firm was the holder of all the notes, and evidently the maker of the notes by the use of the words "holder of the notes" meant Johnston & Perez as a firm, or as joint holders of the notes. Upon their execution and delivery Johnston & Perez became the joint holder of the notes, and they, at the time Johnston availed himself of the option to declare all the notes due, were a part of the partnership assets of the firm of Johnston & Perez, each having a partnership interest therein, which they by their agreement had fixed as 60 per cent. for Johnston and 40 per cent. for Perez. They were as much the holder of these notes when Johnston sought to mature them as they were the day appellee executed and delivered them. No one except the original holder or holders had any interest in the notes. Indeed, there had been no change of ownership whatsoever. By the terms of the agreement between Johnston & Perez the notes remained partnership property, and by such agreement each was the holder thereof for the purpose of collection.

In the Bomar Case no attempt was being made to mature all the notes executed by Skinner. Skinner, so far as shown, was making no complaint of the enforcement of a penalty against him for his failure to pay the first note of the series when due, as the makers of the notes involved in the present suit are doing. The two cases do not present similar questions.

For the reasons pointed out we reverse the judgment, and, in view of the fact that the case was disposed of on demurrer, and that appellee might desire to amend its pleading so as to set up some defense to plaintiff's suit, we remand the cause for another trial.

Reversed and remanded.

GRAVES, J. (dissenting).

This much of the able brief filed here by counsel for defendant in error is adopted as my dissenting opinion:

"If the only amount due on the notes at the time suit was filed was the first installment of interest due July 1, 1929, of $210.00, then clearly the amount in dispute was less than the jurisdictional amount of the district court, and the learned trial judge was correct in sustaining the defendant's demurrer. If plaintiff had the right to mature the whole indebtedness upon default of the first payment of interest, then the court erred, so that the sole and only question before this court is, 'Did plaintiff have the right to mature the whole or his portion of the indebtedness upon defendant's failure to pay the first installment of interest?'

"Plaintiff can only have the right to mature the entire series by virtue of the acceleration clause in the notes, which must be construed and enforced as any other provision in a contract. Notes and other instruments sometime provide for maturity of the whole indebtedness upon failure to pay principal or interest when due, and the failure to pay such principal or interest when due ipso facto matures the whole indebtedness. Notes and other instruments frequently provide for the maturity of the whole indebtedness at the option of the holders, or either of them. This clause permits one of several holders to elect to mature the whole indebtedness upon default by the maker, but in no case, so far as defendant has been able to determine, has the acceleration clause used in the notes under consideration allowed one of two payees to mature the whole indebtedness without the consent, election, and acquiescence of the other payee.

"The Supreme Court of Texas in the case of Bomar v. West, 87 Tex. 299, 28 S. W. 519, 520, had occasion to construe the clause used in the notes in the instant suit, and, in the opinion of that court, there is no such right in one of several payees of a note providing for acceleration at the option of the holder. In the reported case, plaintiff sued in trespass to try title, claiming title through a sale made under a deed of trust given to secure the payment of five notes payable to D. T. Bomar. The deed of trust provided: 'In default of the payment of said notes, or either of them, then a foreclosure of said deed of trust should be had at the instance of said D. T. Bomar, or the legal holder of said notes.' The first note of the series was transferred to the West Publishing Company, and the others to one Callahan. Upon default in the payment of the first note, the trustee, at the request of the publishing company, sold the land. The court held that the trustee did not pass title by his sale. In other words, since the publishing company was not the holder of all the notes, or the holders of the other notes did not join in the request, there was no right in the trustee, or the publishing company, to mature the whole indebtedness by virtue of the clause in the deed of trust. Judge Gaines, speaking for the Supreme Court, said in part:

"'We are of opinion that the sale by the trustee did not pass title to the land. The limitation upon the power of the trustee to

sell upon default in the payment of either of the notes at maturity is that he shall act upon the request of "the holder of the notes." The literal meaning of this language is that any person who was the lawful holder of all the notes at the time default was made in the payment of either of them should have the right to demand of the trustee that he make the sale. It may be that it should be construed to mean that the joint demand of all the holders of the notes would be sufficient to authorize the trustee to execute the trust upon default in the payment of either. But we are of opinion that it does not mean that, in case of a transfer of the several notes to different holders, any one of them has the right to demand a sale without the consent of the others. * * * The deed in trust not having provided that a holder of any one of the notes should have the right to demand a sale, we conclude that the trustee acted without authority, and that his sale passed no title.'

"Plaintiff attempts to distinguish the above case, because it was a sale under a deed of trust in which strict compliance with all the terms and provisions is necessary. Nevertheless the words used in the deed of trust are of the same import as those used in the notes under consideration, and their construction and meaning should be the same whether used in notes, or a deed of trust.

"Further answering plaintiff's attempt to distinguish the above case, Judge Fly, speaking for the court of Civil Appeals at San Antonio, in the case of Parker v. Mazur, 13 S. W.(2d) 174, said: 'A court of equity must scan very closely the enforcement' of an acceleration clause in a note. The construction contended for by plaintiff would be making a new contract for the parties by adding after the words 'at the option of the holder,' the words 'or either of them,' which latter provision is frequently found in notes.

"Plaintiff also pleaded that the notes were given for partnership property and that Perez had authorized him to act in all matters in handling the assets undisposed of, referring to the dissolution agreement attached to the petition.

"Paragraph X of the agreement gave each one the right to use the other's name in collecting accounts, or disposing of other assets as per the agreement, but the notes in question had already been disposed of in Paragraph VI of the agreement, whereby, as pleaded by defendant, plaintiff was given a 60% interest in the notes and Perez a 40% interest therein. If either partner had the right to mature the whole indebtedness prior to the dissolution not only without the consent of the other but against his wishes, such right was lost when the partnership was dissolved, and particularly by Paragraph VI of the agreement whereby

their rights in the notes were determined and they became thenceforth mere joint holders thereof as individuals in the separate proportions so fixed.

"It appears, then, that the honorable district court was correct in sustaining defendant's general demurrer, thereby holding that plaintiff had no right to mature the whole indebtedness; nor do the cases cited by plaintiff lead to any different conclusion."

I think the judgment should have been affirmed.