Eusebio Loredo v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-078-CR

     EUSEBIO LOREDO,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2000-850-C
                                                                                                                
                                                                                                         
DISSENTING OPINION AND DISSENT FROM DENIAL OF
MOTION FOR REHEARING
                                                                                                                

      After considering the State’s motion for rehearing, I withdraw my original concurring opinion
dated January 8, 2003, and incorporate it here in this dissenting opinion and dissent to the denial
of the State’s motion.
      What the majority refuses to reconsider, and what I overlooked in my previous concurring
opinion, is a fundamental principle of error preservation: that the trial court must be made aware
of a complaint at a time and in a manner that it can be corrected. See Tex. R. App. P. 33.1. 
Here, the trial court gave Loredo ample opportunity to correct its assessment of the juror Loredo
sought to challenge. In response to Loredo’s challenge, the court said:
My recollection...is that while she did tell you at one time that probation would not be
a possible punishment in her mind that when I asked her a question she recanted and said
that she would. Does anybody disagree with that? Or have I screwed the numbers up
again?

Loredo’s counsel said nothing.
      The Court of Criminal Appeals has said:
A counsel's statement about an occurrence in the courtroom, which was made for the
purposes of the record, recorded by the court reporter, undisputed by the opposing
counsel, and unquestioned and unqualified by the judge in whose presence the statement
was made, establishes the occurrence for purposes of the appellate record. Yarborough
v. State, 947 S.W.2d 892, 895 (Tex. Crim. App. 1997) (citing Hicks v. State, 525
S.W.2d 177 (Tex. Cr. App. 1975)).

      It would be illogical for this not to apply to the trial court’s statements as well. But if one
would take issue with that reasoning, Loredo did not dispute the prosecutor’s statement that,
“[s]he did say something about probation being an appropriate consideration.”
      The mistake made by the trial court and the prosecutor is similar to a mistake made by a
prosecutor when reciting race neutral reasons for a peremptory strike in the wake of a Batson



challenge. See Ford v. State, 1 S.W.3d 691 (Tex. Crim. App. 1999). In Ford, the appellate court
reversed the trial court because it determined no facts in the record supported the race-neutral
reasons given by the State. Id. at 693. When confronted with a Batson challenge, the prosecutor
stated that she struck a particular juror because the juror knew the defendant’s mother. Id. at 692. 
The defendant did not take issue with that statement. It was revealed on appeal that the prosecutor
questioned another juror about knowing the defendant’s mother, not the juror who was the subject
of the Batson challenge. Id. at 692-693. The State maintained that the prosecutor’s statement was
an “honest mistake.” Id. at 693. In reversing the appellate court, the Court of Criminal Appeals
noted that the reason for striking the juror was uncontradicted and facially plausible. Id.
      Just as in Ford, the trial court in this cause believed the challenged juror had been
rehabilitated. The trial court was mistaken. But no one disputed the court’s recollection even
when given an opportunity to do so. Loredo should not be allowed to claim on appeal that the trial
court erred when counsel took no effort to give the trial court the opportunity to correct its
recollection of events.
      Accordingly, because Loredo failed to preserve the issue for review, I would overrule it. 
Because the majority does not, I respectfully dissent. Additionally, because the majority refuses
to require a response and to address the issue raised in the State’s motion for rehearing, I
respectfully dissent from the denial of the motion for rehearing.
      Additionally, as noted originally in the concurring opinion, without adequate analysis, the
majority purports to hold that community supervision is within the range of punishment to be
considered by a juror. This holding has already been made by the Court of Criminal Appeals. 
See Satterwhite v. State, 858 S.W.2d 412, 418 (Tex. Crim. App. 1993); Williams v. State, 773
S.W.2d 525, 536 (Tex. Crim. App. 1988); and Pierce v. State, 696 S.W.2d 899, 902 (Tex. Crim.
App. 1985) (overruled on other grounds, 757 S.W.2d 744 (Tex. Crim. App. 1988)). There is no
need for the majority to make a holding when there is precedent by which we are bound.
      There is also no need to cite case authority to support the majority’s “holding” that does not
actually support the proposition stated. See, e.g. Johnson v. State, 982 S.W.2d 403 (Tex. Crim.
App. 1998)(not a probation case) and McLennan v. State, 661 S.W.2d 108 (Tex. Crim. App.
1983)(statement was dicta and not necessary to resolve recusal issue).
      Although we are bound by the prior decisions of the Court of Criminal Appeals, I believe
there is a substantial question regarding whether community supervision is actually punishment
and must, therefore, be within the range of punishment that a juror must be able to consider. In
light of more recent cases such as Speth and Ex parte Williams, in which the Court of Criminal
Appeals has clearly stated that community supervision is not part of a sentence, the question of
whether community supervision is punishment ought to be reexamined. See Speth v. State, 6
S.W.3d 530, 532 (Tex. Crim. App. 2000); Ex parte Williams, 65 S.W.3d 656, 657 (Tex. Crim.
App. 2001).

                                                                   TOM GRAY
                                                                   Justice

Dissenting opinion delivered and filed April 23, 2003
Publish



pan>


 In January 1992 the church members decided to
sell the sanctuary. Five months later, another church offered to buy it for $90,000. 
      The church met on July 12 to discuss this offer. As pastor, Libhart presided over the
meeting. The Copelands did not attend this meeting. After some discussion, the members voted
to accept the offer, sell the sanctuary, and dissolve the church. The congregation voted to loan 
Libhart the proceeds remaining after payment of the church’s debts on the condition that he sell
the parsonage which the church gave him in 1987. Libhart would repay the loan with the proceeds
from this sale. According to Libhart, Edna Stone (“Stone”) moved that the congregation give him
the church van.


 Those present voted unanimously in favor of this motion.
      The Copelands later learned about the decisions made in the July 12 meeting. Michael
Copeland (“Michael”) served as chairman of deacons and as a trustee for the church. Because of
his position, he solicited the opinion of an attorney about the appropriate disposition of church
assets upon dissolution. According to Michael, this attorney advised him that if the church was
incorporated, the proceeds would have to be distributed to other religious organizations. Because
of this advice and because he was concerned that the members who voted in the July 12 meeting
were misinformed, he wrote a letter to Libhart detailing his concerns. Upon receipt of the letter,
Libhart scheduled another meeting for July 26.
      Claudell Copeland (“Claudell”) secretly taped the July 26 meeting. During this meeting, the
members voted to divide the church’s remaining funds after payment of debts among Reverend
Marvin Weido


, Arlington Baptist College, and other charitable organizations. Stone asked what
would be done with the van. Libhart responded, “Whatever you want to do with it, sister.” The
congregation also voted to forgive the July 12 loan in exchange for Libhart’s promise that he
would distribute the proceeds from the sale of the parsonage to worthy causes. Libhart assured
those present that he would prepare a financial statement detailing the final distribution of the
church’s assets by August 1.
      No church funds were distributed to any of the charitable organizations mentioned in the July
26 meeting. Libhart sold the van in 1993 for $5,000. He sold the parsonage to Tracey and David
Reynolds, his daughter and son-in-law, on June 2, 1994, for $10.


 Libhart did not prepare the
promised financial statement until April of 1993. The statement reflects that $73,233.63 in net
proceeds remained after the sale of the sanctuary. Libhart disbursed the proceeds as follows:
            Current Accounts:             $1,272.20
            Past Due Salaries:               7,255.00
            Delinquent Accounts:           2,045.28
            Closing Building Costs:        1,040.00
            Pastor’s Gift:                    59,022.60
            Mission Benevolence:          2,522.03
            Miscellaneous:                        76.52



 
The parties do not dispute that Libhart and Johnson used $55,000 of the $59,022.60 “gift” to pay
for their new home near Penelope in Hill County.
II. PLEA IN ABATEMENT
      By their first point, Libhart and Johnson assert that the court erred in denying their plea in
abatement. They asked the court to abate the suit because Appellees lack the capacity to sue on
behalf of the dissolved church. Appellees respond that Libhart and Johnson have not properly
preserved this point for our review because a copy of the court’s order denying the plea in
abatement is not in the transcript.


 In the alternative, Appellees assert that they can sue on behalf
of the members of the dissolved church because the suit involves issues which can be decided on
neutral principles of law.
A. Preservation of Error
      As a general principle, we may not consider orders attached to briefs but not included in the
record. See Davis v. Huey, 571 S.W.2d 859, 862 n.2 (Tex. 1978); Banowsky v. State Farm Mut.
Auto. Ins. Co., 876 S.W.2d 509, 513 (Tex. App.—Amarillo 1994, no writ). Appellate courts
have required that the court’s denial of a plea in abatement appear in the record before the
propriety of the denial can be considered properly preserved for appellate review. Cadle Co. v.
Estate of Weaver, 897 S.W.2d 814, 816-17 (Tex. App.—Dallas 1994, writ denied); Forest Cove
Property Owners Ass’n v. Lightbody, 731 S.W.2d 170, 171 (Tex. App.—Houston [1st Dist.] 1987,
no writ).
      However, the Supreme Court has more recently made it clear that “[j]udicial economy is not
served when a case, ripe for decision, is decided on a procedural technicality of this nature. In
the interests of justice and fair play, cases should be decided on the merits when deficiencies of
this nature can be easily corrected.” Silk v. Terrill, 898 S.W.2d 764, 766 (Tex. 1995); accord
Soto v. El Paso Natural Gas Co., 942 S.W.2d 644, 645 (Tex. App.—El Paso 1996, no writ).
      Appellees do not contest the authenticity of the order appended to Libhart’s and Johnson’s
brief. Appellees’ brief also presents alternative arguments addressing the merits of the issues
raised by the plea in abatement. Therefore, we will consider Libhart’s and Johnson’s first point
in the interests of justice. See Silk, 898 S.W.2d at 766.
B. Appellees’ Capacity to Sue
      The parties do not dispute that Appellees were all members of the church prior to its
dissolution. Tabernacle Baptist Church was an unincorporated association.


 The church’s by-laws
provided:
Provisions for announcements of meetings of the TABERNACLE BAPTIST CHURCH
are herein stated and such provisions are considered sufficient notice to all members of
the Corporation that decisions reached by a majority of the members present shall express
the will of the Corporation and shall as such, bind the Corporation to any agreements,
contracts, commitments, or notes which shall be then executed for and in behalf of the
Corporation.

The by-laws also provided that “[s]pecial meetings of the Corporation may be called for any
purpose by the Pastor and a majority of the Trustees, by posting notice of such meeting
prominently on Church premises seven (7) days prior to such meeting, stating the special business
of the meeting.”
      Libhart and his son-in-law David Reynolds (“David”) served with Michael as trustees of the
church. David and Franklin Hetherington


 served with Michael as church deacons.
      David testified that a notice was posted for the July 12 meeting. Michael and Claudell
testified that they received no notice of the meeting.
      By their plea, Libhart and Johnson allege that Appellees lack the capacity to bring this action
on behalf of the church because it was dissolved prior to the institution of suit. Libhart and
Johnson also aver in their brief that Appellees’ suit concerns matters of church policy and
procedure not appropriate for the courts to decide. Because the church voted in a duly called
meeting to forgive Libhart’s “loan,” they contend that the courts cannot intervene in the matter.
1. Unincorporated Associations
      “Historically, unincorporated associations [have not been] considered separate legal entities
and [have] had no existence apart from their individual members.” Cox v. Thee Evergreen
Church, 836 S.W.2d 167, 169 (Tex. 1992) (citing Tunstall v. Wormley, 54 Tex. 476, 481 (1881)). 
Thus, they have been incapable of suing or being sued as a corporate body. Id.
      “Unincorporated associations long have been a problem for the law. They are analogous to
partnerships, and yet not partnerships; analogous to corporations, and yet not corporations;
analogous to joint tenancies, and yet not joint tenancies; analogous to mutual agencies, and yet not
mutual agencies.” Id. at 169 n.3.
      Rule 28 of the Rules of Civil Procedure permits an unincorporated association to file a lawsuit
in its own name but does not mandate this. See Tex. R. Civ. P. 28. The plain language of the
rule states, “[a]ny . . . unincorporated association . . . may sue . . . in its . . . assumed or common
name for the purpose of enforcing for . . . it a substantive right . . . .” Id. (emphasis added). 
Although an association may sue in its own name, individual members may also bring suit on
behalf of the association. See Davis v. Hudgins, 225 S.W. 73, 76 (Tex. Civ. App—Dallas 1920, 
no writ).
      The Dallas Court of Civil Appeals held that some members may sue on behalf of the members
of an unincorporated association under the doctrine of virtual representation. Id. Under this
doctrine, all members of the association are proper but not necessary parties. Id. As the court
stated:
[T]he doctrine of virtual representation, which originated at an early date, recognizes the
right of a few persons to sue for themselves and all others similarly situated. Under this
doctrine, the persons who are not joined by name as parties are in a sense before the
court. They have been called quasi parties, and have even been said to be parties in
substance and legal effect. In all cases to which the doctrine of representation applies
there must be joined as parties persons who fairly represent the interest or right involved,
so that it may be tried fairly and honestly. It is sufficient if the parties before the court
enable it fairly and fully to adjudicate the question involved. The parties represented
must have a common interest with those before the court, and consequently the parties
before the court cannot act as representatives if their interests are antagonistic to those
who would be represented. . . . And so, a suit in equity may be brought by some of the
members of an unincorporated association as representatives of all the members . . . .

Id.
2. The First Amendment
      The First Amendment ordinarily prohibits civil courts from concerning themselves with
ecclesiastical questions and controversies. Lide v. Miller, 573 S.W.2d 614, 615 (Tex. Civ.
App.—Texarkana 1978, no writ); accord Diocese of Galveston-Houston v. Stone, 892 S.W.2d
169, 176 (Tex. App.—Houston [14th Dist.] 1994, orig. proceeding). However, we do have
jurisdiction to review matters involving civil, contract, or property rights even though they stem
from a church controversy. Lide, 573 S.W.2d at 615.
      We must apply neutral principles of law to decide such matters so that we do not violate the
constitutional prohibition against government established religion. Presbytery of the Covenant v.
First Presbyterian Church of Paris, Inc., 552 S.W.2d 865, 870 (Tex. App.—Texarkana 1977, no
writ). If the conflict cannot be resolved solely by the application of neutral principles of law, we
must defer to the decision made by the highest authority of the church from which the question
or controversy arises. See Patterson v. Southwestern Baptist Theological Seminary, 858 S.W.2d
602, 605-6 (Tex. App.—Fort Worth 1993, no writ); Waters v. Hargest, 593 S.W.2d 364, 365 
(Tex. Civ. App.—Texarkana 1979, no writ).
      As reflected in the by-laws, Tabernacle Baptist Church had a congregational form of church
government as opposed to a hierarchical system. See Watson v. Jones, 80 U.S. (13 Wall.) 679,
722-23, 20 L. Ed. 666, 674 (1872). In churches with a congregational form of government,
ultimate decision-making authority vests in the members. See First Baptist Church v. Fort, 93
Tex. 215, 227, 54 S.W. 892, 896 (1900). Thus, if the controversy in issue cannot be decided by
the application of neutral principles of law, we must defer to the majority vote of the congregation. 
Patterson, 858 S.W.2d at 606.
      When we seek to apply neutral legal principles to the issue before us, we may employ “the
ordinary principles which govern voluntary associations.” Fort, 93 Tex. at 227, 54 S.W. at 896. 
We do not act as a referee for disputes among the members of an association
so long as the government of the [association] is fairly and honestly administered in
conformity with its laws and with the law of the land, and no property or civil rights are
invaded. Conversely, the proceedings of the association are subject to judicial review
where there is fraud, oppression, or bad faith, or property or civil rights are invaded, or
the proceedings in question are violative of the laws of the [association], or the law of the
land, or are illegal.

Fraser v. Buck, 234 S.W. 679, 683 (Tex. Civ. App.—Galveston 1921, no writ); see also Tilton
v. Marshall, 925 S.W.2d 672, 677-80 (Tex. 1996); Hendryx v. People’s United Church, 42 Wash.
336, 84 Pac. 1123, 1127 (1906).
      Our Supreme Court said in Tilton, “The [First Amendment] never has immunized clergy . .
. from all causes of action alleging tortious conduct.” Tilton, 925 S.W.2d at 677. In Hendryx,
the Supreme Court of Washington declared:
[T]he bald question here is, can a man . . . by chicanery, deceit, and fraud, divert the
property of a church organization to a purpose entirely foreign to the purposes of the
organization, for [his] own selfish benefit . . .? Neither the law nor public policy will
sustain such a rule. Fraud vitiates all transactions and, if [some action is taken] for a
fraudulent purpose to carry out a fraudulent scheme, the [action] is a void act, and of no
force of effect whatever. Equity will compel fair dealing, disregarding all forms and
subterfuges, and looking only to the substance of things.
Hendryx, 84 Pac. at 1127; accord Bomar v. Mount Olive Missionary Baptist Church, 92 Cal. App.
618, 268 Pac. 665, 668 (Cal. Dist. Ct. App. 1928); see also Annotation, Determination by the
Civil Courts of Property Rights Between Contending Factions of an Independent or Congregational
Church, 70 A.L.R. 75, 75-77 (1931).
      From these authorities we discern that generally the court should not intervene in church
disputes. Lide, 573 S.W.2d at 615. However, when church proceedings are tainted by fraud,
judicial review is appropriate. See Fraser, 234 S.W. at 683; Hendryx, 84 Pac. at 1127.
3. Application
      Appellees brought this suit on behalf of the former church and its members, including
themselves. Their petition alleges that Libhart and Johnson fraudulently misrepresented “material
facts regarding the sale proceeds of the church facilities”; that they converted the church van; and
that the church has “been deprived of the proper disposition of church assets due to [their]
misrepresentations . . . . In contrast, [Libhart and Johnson] have been unjustly enriched by being
allowed to retain the property which was purchased with the assets wrongfully diverted from
Tabernacle Baptist Church.”
(A) Virtual Representation
      We find that the parties before the court “enable[d] it fairly and fully to adjudicate the
question[s] involved.” Davis, 225 S.W. at 76. Thus, Appellees have the capacity to bring this
suit under the doctrine of virtual representation. Id.
(B) The First Amendment
      Libhart and Johnson assert that the majority vote of the congregation is binding because the
members of the church are the ultimate decision-making authority according to Baptist church
polity. As a result, they contend the court cannot revisit the issues already decided by the church. 
      We agree that ultimate authority vested in the membership of the church. Fort, 93 Tex. at
227, 54 S.W. at 896. However, the allegations of Appellees’ petition fit squarely within the fraud
exception described in Fraser and Hendryx. See Fraser, 234 S.W. at 683; Hendryx, 84 Pac. at
1127. Thus, the First Amendment does not prohibit the courts from reviewing the claims alleged
in Appellees’ petition. Id.
(C) Dissolution of the Church
      Libhart and Johnson also suggest that because Appellees did not obtain authorization from the
church prior to its dissolution, they cannot now sue on its behalf.


 We cannot endorse this
proposition. Rather, we analogize this situation to that of lawsuits brought on behalf of a
partnership following dissolution. See Cox, 836 S.W.2d at 169 n.3.
      “A suit may be maintained by a partnership when its affairs have not been entirely settled,
though it has been dissolved.” Johnston v. Diversified Fruit Farms, Inc., 38 S.W.2d 362, 364
(Tex. Civ. App.—Galveston 1931), rev’d on other grounds, 58 S.W.2d 73 (Tex. Comm’n App.
1933, judgm’t adopted); accord American Cotton Co. v. Whitfield & Mitchell, 88 S.W. 300, 300
(Tex. Civ. App. 1905, no writ). In both of these cases, after formal dissolution of the partnership,
the former partners brought suit against entities with which the partnership had contracted. 
Johnston, 38 S.W.2d at 362-64; American Cotton Co., 88 S.W. at 300. Johnston filed suit in his
own name to collect six promissory notes made payable to his former partnership. Johnston, 38
S.W.2d at 362-63. Whitfield and Mitchell filed suit in the name of their dissolved partnership. 
American Cotton Co., 88 S.W. at 300.
      The courts determined in both these cases that the former partners could maintain suit on
behalf of their dissolved partnerships. Johnston, 38 S.W.2d at 364; American Cotton Co., 88
S.W. at 300. Based on these authorities, we hold that former members of a dissolved association
may institute a lawsuit to enforce the substantive rights of the association. See Johnston, 38
S.W.2d at 364.
C. Appellees’ Standing to Sue
      Libhart and Johnson also claim in their first point that Appellees lack standing to sue because
they have shown no personal injury, because the majority of the church approved the disposition
of the church’s assets, and because Appellees transferred their memberships to other churches. 
Appellees respond that Libhart and Johnson fraudulently deprived them of the ownership interest
they had in the church’s property prior to its dissolution. Thus, they and the other church
members each suffered a direct and personal injury as a result of Libhart’s and Johnson’s
fraudulent conduct.
      A litigant must demonstrate a personal stake in the controversy to establish standing. Hunt
v. Bass, 664 S.W.2d 323, 324 (Tex. 1984). “[S]tanding implicates the trial court’s subject matter
jurisdiction.” Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex.
1996). Thus, a party may raise it for the first time on appeal. Id.
      Standing generally requires: (a) a real controversy between the parties, which (b) will be
actually determined by the relief sought. Texas Ass’n of Business v. Texas Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993) (quoting Board of Water Engineers v. City of San Antonio, 155 Tex.
111, 114, 283 S.W.2d 722, 724 (1955)).
      We have already determined that Appellees have the capacity to bring this suit on behalf of
the members of the former church. We have also determined that this suit can be maintained
notwithstanding the dissolution of the church. As members of the former church, Appellees have
a personal stake in the proper distribution of the assets of their former church. Hunt, 664 S.W.2d
at 324. In addition, the controversy which they present can be (and has been) actually determined
by the judicial remedy which they seek (and have obtained). Tex. Ass’n of Business, 852 S.W.2d
at 446. Therefore, Appellees have standing to bring this suit.
D. Summary
      Appellees properly instituted this suit under the doctrine of virtual representation. Their
claims can be determined by the application of neutral principles of law.
      As former members of a dissolved association, they can properly institute this suit to enforce
the substantive rights of the church. Thus, the court did not err in denying Libhart’s and
Johnson’s plea in abatement.
      Because Appellees have a personal stake in the proper distribution of the assets of their former
church and because the controversy which they present can be actually determined by the judicial
remedy which they seek, Appellees possess the requisite standing to bring this action.
      For these reasons, we overrule Libhart’s and Johnson’s first point.
III. DENIAL OF SUMMARY JUDGMENT MOTION
      Libhart and Johnson allege in their second point that the court erred in denying their motion
for summary judgment.
      The court’s denial of a motion for summary judgment is not reviewable on appeal when the
case has been tried on the merits. Orozco v. Orozco, 917 S.W.2d 70, 72 (Tex. App.—San
Antonio 1996, writ denied) (citing Ackermann v. Vordenbaum, 403 S.W.2d 362, 365 (Tex.
1966)).
      The parties tried this case on its merits following the court’s denial of the motion for summary
judgment. Thus, the court’s order denying Libhart’s and Johnson’s motion is not appealable. Id. 
We overrule Libhart’s and Johnson’s second point.
IV. THE POST-VERDICT TRIAL AMENDMENT
      In their fourth point, Libhart and Johnson contend that the court erred in granting Appellees’
post-verdict trial amendment because it surprised and prejudiced them. Appellees respond that
the court did not abuse its discretion when it allowed the amendment because Libhart and Johnson
offered no proof of surprise or prejudice and because the amendment merely conformed the
pleadings to the evidence at trial.
      Appellees’ Original Petition alleged that Libhart and Johnson fraudulently obtained and
converted for their own use the proceeds from the sale of the sanctuary. The petition also alleged
that Libhart and Johnson had converted the church van. In a supplemental petition filed before
trial, Appellees alleged that they sought a maximum of $80,000 in actual damages, plus interest
and attorneys’ fees.
      Libhart testified that the church loaned him the proceeds from the sale of the sanctuary on the
condition subsequent that he sell the parsonage and donate the proceeds of that sale to charity. 
Appellees then asked about the size of the parsonage. Libhart objected that evidence about the
parsonage is irrelevant. The court overruled this objection. Appellees then questioned him at
length about the parsonage without further objection. He testified that the church gave him the
parsonage at his request in 1987. Libhart explained that a tax advisor informed him that he 
needed the parsonage transferred to him for income tax purposes. Appellees sought to impeach
Libhart with section 107 of the Internal Revenue Code which provides that the rental value of a
parsonage is not included in a minister’s taxable income. 26 U.S.C.A. § 107 (West 1988).
      Appellees elicited other testimony from Libhart about the parsonage without objection. 
Libhart testified that he never had title to the parsonage transferred from the church to himself
because it had a lien against it when the church gave it to him. As a result, he never paid any
property taxes on the parsonage. Nor did he list the parsonage as an asset when he filed
bankruptcy in 1989.
      When Libhart sold the parsonage to David and Tracey in 1994, he had an attorney prepare
a warranty deed from Tabernacle Baptist Church to them. Libhart signed the deed on behalf of
the church as pastor, David signed as chairman of the board, and Johnson signed as secretary. 
Libhart and Johnson did not object to the admission of the deed in evidence. Libhart further
explained that David was not the chairman of the board and he did not know “how that title got
on that line.”
      In their argument to the jury, Appellees contended that Libhart defrauded the church of the
parsonage. They reiterated that he had paid no taxes on the property and failed to list it as an asset
when he filed bankruptcy. They urged the jury to award damages of $66,000 for the proceeds
from the sale of the sanctuary, $55,000 for the value of the parsonage,


 and between $5,000 and
$10,000 for the van. Libhart and Johnson did not object to these arguments. The jury awarded
damages of $126,000.
      Appellees requested a post-verdict trial amendment to conform their pleadings to the evidence
that Libhart and Johnson had fraudulently obtained and converted the parsonage and had caused
damages of $126,000. Appellees suggested to the court that these matters had been tried by
consent because Libhart and Johnson failed to object to the evidence about the parsonage.
      Libhart and Johnson responded that the issue was not tried by consent because the parsonage
is relevant to the conditions of the loan of the sanctuary proceeds to Libhart and Johnson. Thus,
no objection was required. They further argued that the proposed amendment would serve to
surprise and prejudice them because it introduced a new cause of action. They suggested that had
Appellees sought such an amendment before or during trial, they could have sought a continuance
or recess in order to defend against the new cause of action.
      The court granted Appellees’ trial amendment.
      “A court may not refuse a [post-verdict] trial amendment unless (1) the opposing party
presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or
defense, and thus is prejudicial on its face.” State Bar of Texas v. Kilpatrick, 874 S.W.2d 656,
658 (Tex. 1994) (citing Greenhalgh v. Service Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex.
1990)); accord Hardin v. Hardin, 597 S.W.2d 347, 349-50 (Tex. 1980). The court’s decision to
grant or deny such an amendment will not be reversed unless “a clear abuse of discretion” is
shown. Kilpatrick, 874 S.W.2d at 658 (citing Hardin, 597 S.W.2d at 349-50).
      In this case Appellees’ proposed amendment asserts a new cause of action. The original
petition alleged that Libhart and Johnson had fraudulently obtained the proceeds from the sale of
the sanctuary and converted them to their own use. The events which supported these allegations
occurred in 1992. Appellees’ amendment asserted a cause of action for Libhart’s and Johnson’s
fraudulent taking of the parsonage in 1987 and its conversion in 1994. These allegations state a
distinct cause of action from the allegation that Libhart and Johnson fraudulently obtained the
proceeds from the sale of the sanctuary in 1992. Thus, the decision to grant Appellees’ requested
amendment rested within the court’s discretion. Kilpatrick, 874 S.W.2d at 658.
      Because a post-verdict amendment which asserts a new cause of action is prejudicial on its
face, we are constrained to find that the court abused its discretion in granting the amendment
unless the matter was tried by consent. See Bell v. Meeks, 725 S.W.2d 179, 179 (Tex. 1987).
      Rule 67 of the Rules of Civil Procedure provides in pertinent part that “[w]hen issues not
raised by the pleadings are tried by express or implied consent of the parties, they shall be treated
in all respects as if they had been raised in the pleadings.” Tex. R. Civ. P. 67. The rule of trial
by consent is limited to those exceptional cases where the parties clearly tried an unpleaded issue
by consent. White v. Sullins, 917 S.W.2d 158, 160 (Tex. App.—Beaumont 1996, writ denied). 
The rule should be cautiously applied and not in doubtful situations. Id. at 161.
      An objection to the submission of a jury question on an unpleaded issue prevents the trial of
that issue by implied consent. Harkey v. Texas Employers’ Ins. Ass’n, 146 Tex. 504, 509, 208
S.W.2d 919, 922 (1948); Marine Creek Partners, Ltd. v. Caldwell, 926 S.W.2d 793, 796 (Tex.
App.—Fort Worth 1996, no writ). When evidence relevant to an unpleaded issue as well as a
pleaded issue has been admitted without objection, the doctrine of trial by consent “should not be
applied unless clearly warranted.” Born v. Virginia City Dance Hall & Saloon, 857 S.W.2d 951,
956 (Tex. App.—Houston [14th Dist.] 1993, writ denied); accord Wendell v. Central Power &
Light Co., 677 S.W.2d 610, 618 (Tex. App.—Corpus Christi 1984, writ ref’d n.r.e.).
      To determine whether an issue was tried by consent, “we must examine the record not for
evidence of the issue, but rather for evidence of trial of the issue.” Id. “The doctrine of implied
consent applies only where it appears from the record that the issue was actually tried, although
not pleaded.” Watts v. Watts, 563 S.W.2d 314, 316 (Tex. Civ. App.—Dallas 1978, writ ref’d
n.r.e.).
      In this case, Appellees repeatedly introduced evidence without objection of Libhart’s
acquisition of the parsonage and his sale of it to David and Tracey for a nominal consideration. 
Counsel for Appellees constantly characterized these transactions as fraudulent in the questions
he propounded to the witnesses.
      Libhart and Johnson did not object that the charge impermissibly permitted the jury to find
that they had fraudulently obtained the parsonage.
      Appellees’ counsel argued without objection that Libhart and Johnson had defrauded the
church of the parsonage and that the church was entitled to compensation for it. Counsel for
Libhart and Johnson responded to this argument by stating that they did not defraud the church
of the parsonage.
      The evidence surrounding the parsonage is relevant to both pleaded and unpleaded issues. 
Thus, Libhart’s and Johnson’s failure to object to this evidence does not mean that they implicitly
consented to a trial on this issue. Born, 857 S.W.2d at 956.
      However, the argument of Appellees’ counsel specifically sought recovery for Libhart’s and
Johnson’s fraud in connection with the parsonage. Libhart’s counsel responded that he did not
obtain the parsonage by fraudulent means. Therefore, because Libhart and Johnson failed to
object not only to the evidence concerning the parsonage but also to Appellees’ argument seeking
recovery for the parsonage, we find that the issue was tried by consent.
      Pursuant to Appellees’ motion, the court made an additional finding of fact that Libhart and
Johnson fraudulently obtained the parsonage from the church. Libhart and Johnson claim that no
evidence exists to support Appellees’ recovery of damages for the parsonage. They cite Turner,
Collie & Braden, Inc. v. Brookhollow, Inc. as authority. 642 S.W.2d 160, 165 (Tex. 1982).
      Turner is inapposite, however, because in that case, the trial court submitted an incorrect
measure of damages in the pertinent special issue. Id. As we will explain later, the court
submitted substantially correct damages questions in this case.
      When we decide a “no evidence” point, we consider only the evidence and inferences which
tend to support the contested issue and disregard all evidence and inferences to the contrary.
Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 458 (Tex. 1992). We must uphold the verdict
if we find any probative evidence supporting the issue. Southern States Transp., Inc. v. State, 774
S.W.2d 639, 640 (Tex. 1989).
      Libhart testified that he was trying to sell the parsonage for $55,000. He agreed with
Appellees’ counsel that it was worth that much. This constitutes some probative evidence from
which the jury could rationally award damages of $55,000 for the fraudulent taking and conversion
of the parsonage. Redman Homes, Inc. v. Ivy, 920 S.W.2d 664, 669 (Tex. 1996) (property owner
is qualified to testify to the market value of his property); Porras v. Craig, 675 S.W.2d 503, 504
(Tex. 1984); Taiwan Shrimp Farm Village Ass’n v. U.S.A. Shrimp Farm Dev., Inc., 915 S.W.2d
61, 71 (Tex. App.—Corpus Christi 1996, writ denied) (corporate president can testify to market
value of corporate property). Thus, legally sufficient evidence exists to support the jury’s award
of damages for the parsonage. Southern States Transp., 774 S.W.2d at 640.
      Because the issue was tried by consent, the court did not abuse its discretion in granting
Appellees’ post-verdict trial amendment. The record contains probative evidence to support the
jury’s award of damages for the parsonage. Thus, we overrule Libhart’s and Johnson’s fourth
point.
V. MEASURE OF DAMAGES
      Libhart’s and Johnson’s third point complains that the court submitted damages questions
which were defective because they did not contain instructions concerning the proper measure of
damages. Appellees respond that Libhart and Johnson have not properly preserved this matter for
appellate review because they did not indicate the proper measure of damages in their objections
to the damages questions. In the alternative, Appellees argue that even if the court submitted
defective damages questions, such error does not require reversal because the verdict is supported
by the pleadings and the evidence.
      The court presented a proposed charge to the parties for their review. The proposed charge
contained three damages questions. The court conditioned these questions on affirmative findings:
(1) that Libhart had committed actual or constructive fraud; (2) that Johnson had committed actual
or constructive fraud; and (3) that Libhart and/or Johnson had converted personal property of the
church. The damages questions each asked the jury “[w]hat sum of money, if paid now in cash,
would fairly and reasonably compensate Tabernacle Baptist Church or its members, including
Plaintiffs, for their damages, if any, that were proximately caused by” the fraud committed by
Libhart, by the fraud committed by Johnson, and by the conversion of personal property
committed by Libhart and/or Johnson.
      The proposed charge defined “proximate cause” as 
that cause which, in a natural and continuous sequence, produces an event, and without
which cause such event would not have occurred. In order to be a proximate cause, the
act or omission complained of must be such that a person using ordinary care would have
foreseen that the event, or some similar event, might reasonably result therefrom. There
may be more than one proximate cause of an event.

      Libhart and Johnson tendered a proposed written instruction for the appropriate measure of
damages in a fraud case. Their proposed instruction defined the proper measure of damages as
“the actual amount of the plaintiff’s loss resulting directly and proximately from the fraud, if any,
practiced upon him.” They cited C & C Partners v. Sun Exploration & Prod. Co. in support of
this definition. 783 S.W.2d 707, 719 (Tex. App.—Dallas 1989, writ denied). The court refused
this proposed instruction.
      Libhart and Johnson also objected to the three damages questions on the basis that they
contain “no measure of damages . . . and permit[] recovery upon an improper legal standard.” 
The court overruled their objections.
      A party who stands to benefit from a limiting instruction on damages must object to the
question submitted and tender a proposed instruction in substantially correct form in order to
preserve the right to complain on appeal about the omission of such an instruction. See Cameron
v. Terrell & Garrett, Inc., 618 S.W.2d 535, 538 n.4 (Tex. 1981); Jim Howe Homes, Inc. v.
Rogers, 818 S.W.2d 901, 903 (Tex. App.—Austin 1991, no writ); Texas Power & Light Co. v.
Barnhill, 639 S.W.2d 331, 334-35 (Tex. App.—Texarkana 1982, writ ref’d n.r.e.). 
      In this case, Libhart and Johnson objected to the questions submitted on the basis that none
of them contain a proper measure of damages. They also tendered a proposed instruction in
substantially correct form. Thus, they properly preserved their right to complain of the absence
of a limiting instruction in these questions. Rogers, 818 S.W.2d at 903.



      The court must submit broad-form questions in the charge absent extraordinary circumstances. 
Texas Dep’t of Human Serv. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). The court has broad
discretion in framing the questions to be submitted, “subject only to the requirement that the
[questions] submitted must fairly submit the disputed issues for the jury’s determination.” Hedley
Foodlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 835 (Tex. App.—Amarillo 1993, writ denied).
      In order to fairly submit the issue of damages, a question must enable a jury to determine the 
amount of damages on appropriate grounds and correct legal principles. Id. (citing Jackson v.
Fontaine’s Clinics, Inc., 499 S.W.2d 87, 90 (Tex. 1973)). “A [question] is fatally defective if it
fails to guide the jury to a finding on any proper legal measure of damages.” Id.
      The common law provides three measures of actual damages for fraud: “The general damage
measurements commonly called ‘out of pocket[]’ [and] ‘benefit of the bargain[,]’ and special
damages.” Airborne Freight Corp. v. C. R. Lee Enter., Inc., 847 S.W.2d 289, 295 (Tex.
App.—El Paso 1992, writ denied). Special damages are consequential damages limited to those
“damages which proximately resulted from the fraud [alleged].” El Paso Dev. Co. v. Ravel, 339
S.W.2d 360, 365 (Tex. Civ. App.—El Paso 1960, writ ref’d n.r.e.); accord Airborne Freight
Corp., 847 S.W.2d at 295.



      In a conversion case, the measure of damages includes “the sum of money necessary to
compensate [the] actual loss[ ] . . . sustained as a natural and proximate result of the defendant’s
wrong.” Associated Tel. Directory Publishers, Inc. v. Five D’s Publishing Co., 849 S.W.2d 894,
898 (Tex. App.—Austin 1993, no writ).
      The damages questions submitted to the jury in the instant case each limited the jury to those
damages “proximately caused” by Libhart’s and Johnson’s fraud and by their conversion of church
personalty. In other words, the court limited the jury in each question to the pecuniary loss which
proximately resulted from the fraud and conversion committed by Libhart and Johnson. Thus,
each question fairly guided the jury to a finding on an appropriate measure of damages. See
Airborne Freight Corp., 847 S.W.2d at 295; Five D’s Publishing Co., 849 S.W.2d at 898.
      Libhart and Johnson also argue that the damages questions erroneously permitted the jury to
award damages for fraud in connection with the parsonage which were supported by neither the
pleadings nor the evidence.
      We have already determined that the parties tried the issue of Libhart and Johnson
fraudulently obtaining the parsonage by consent. Thus, it is immaterial that the jury’s award had
no basis in the pleadings at the time of the verdict. See City of Princeton v. Abbott, 792 S.W.2d
161, 167 (Tex. App.—Dallas 1990, writ denied).
      In determining that this issue was tried by consent, we also determined that Appellees offered
evidence supporting the issue. Therefore, the damages questions for fraud were supported by the
evidence. Id.
      We overrule Libhart’s and Johnson’s third point.
VI. FRAUD
      Libhart and Johnson aver in their fifth point that the evidence is legally and factually
insufficient to support the court’s decision to submit fraud questions to the jury or the jury’s
affirmative answers to those questions. They also argue that as a result, the jury could not assess
exemplary damages.
      To prove fraud, a plaintiff must show:
      (1)  the defendant made a material representation;
      (2)  which was false;
      (3)  the defendant made the representation knowing it to be false or made it recklessly as a
positive assertion without any knowledge of its truth;
      (4)  the defendant intended that the plaintiff act upon the representation;
      (5)  the plaintiff acted in reliance upon the representation; and
      (6)  suffered injury as a result.

Eagle Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 723 (Tex. 1990).
      A claim of fraud can be based on a promise to perform a future action made with a present
intent not to perform. Stanfield v. O’Boyle, 462 S.W.2d 270, 272 (Tex. 1971); Chicago, T. &
M. C. Ry. Co. v. Titterington, 84 Tex. 218, 223-24, 19 S.W. 472, 474 (1892); New Process Steel
Corp. v. Steel Corp. of Texas, 703 S.W.2d 209, 214 (Tex. App.—Houston [1st Dist.] 1985, writ
ref’d n.r.e.). Under these circumstances,
[a] “misrepresentation” may consist of the concealment of a material fact when there is
a duty to speak. The duty to speak or to disclose arises when one party knows that the
other party is relying on the [concealed] fact, provided that he knows the relying party
is ignorant of the facts and does not have an equal opportunity to discover the truth.

Id. “‘Slight circumstantial evidence’ of fraud, when considered with the breach of promise to
perform, is sufficient to support a finding of fraudulent intent.” Spoljaric v. Percival Tours, Inc.,
708 S.W.2d 432, 435 (Tex. 1986) (quoting Maulding v. Niemeyer, 241 S.W.2d 733, 738 (Tex.
Civ. App.—El Paso 1951, orig. proceeding)).
      Libhart and Johnson claim Appellees offered no evidence to support a finding either that they
relied upon any misrepresentation or that they personally suffered any injury as a result of such
reliance.
 A. Legal Sufficiency
      When considering the legal sufficiency of the evidence, we consider only the evidence and
inferences which tend to support the contested issue and disregard all evidence and inferences to
the contrary. Havner, 825 S.W.2d at 458. We must uphold the verdict if we find any probative
evidence supporting the issue. Southern States Transp., 774 S.W.2d at 640.
1. Reliance on Libhart’s Representations
      We have already determined that Appellees properly instituted this suit on behalf of the
members of their former church. Their pleadings allege that the members of the church relied
upon Libhart’s representations regarding the disposition of the proceeds from the sale of the
sanctuary and the parsonage.


 The charge asked the jury whether Libhart and Johnson had
committed actual fraud against the church or its members.
      Unimpeached evidence establishes that the members unanimously voted on July 12 to loan a
portion of the sanctuary proceeds to Libhart on the condition subsequent that he repay the loan
with proceeds from the sale of the parsonage. The members voted two weeks later to absolve the
loan in exchange for Libhart’s promise that he would donate the proceeds from the sale of the
parsonage to worthy causes.
      From this we conclude that some probative evidence exists to support a finding that the
members of the church relied upon representations by Libhart which proved to be false. Southern
States Transp., 774 S.W.2d at 640. Thus, the evidence is legally sufficient to support the jury’s
finding on the issue of reliance on Libhart’s representations.
2. Reliance on Johnson’s Representations
      Appellees’ petition alleges that the members of the church relied upon Johnson’s
representations regarding the disposition of the proceeds from the sale of the sanctuary and the
parsonage. Their pleadings also allege that they relied on Johnson’s representations because of
the confidential relationship established during her years of service to the church.
      The charge instructed the jurors that they could find Johnson liable for fraud if they found 
that she had failed to disclose a material fact, intended to induce the members to take some action
by withholding that fact, and the members were injured because they acted without knowledge of
the undisclosed fact. Thus, we must determine whether any probative evidence supports a finding
that the members of the church acted without knowledge of a material fact which Johnson failed
to disclose.
      Libhart and Johnson served the church for nineteen years. In addition, Johnson served as an
officer of the church. Claudell testified that she looked up to Libhart and Johnson very much
because of their respective positions as pastor and pastor’s wife. Libhart testified that Johnson and
he had a special duty of confidence and trust to the congregation.
      Claudell recalled that Michael and she went on a trip with Libhart and Johnson to Gun Barrel
City in December 1991. As they drove along the highway, Libhart and Johnson noted “every
piece of property” that was for sale and wrote down the phone numbers displayed in order to later
check on the property.
      Libhart testified that Johnson and he had been looking for a home in the country before the
church decided to sell the sanctuary. They had selected their new home in Penelope and knew its
price before the church met on July 12. Libhart agreed that he could not have repaid the loan
based on his income in 1992.
      From these facts we find probative evidence that would allow the jury to infer that Johnson
and Libhart had decided to purchase their new home with the sanctuary proceeds before the church
voted concerning the disposition of the proceeds. The record also contains probative evidence that
Johnson and Libhart did not intend to repay the loan, particularly in light of the fact that they were
financially unable to do so at the time the church voted to loan them the money.
      The church voted to loan them the money based on Libhart’s affirmative representations that
they would repay it with the parsonage proceeds. Johnson was present and did not refute these
representations.
      From this we conclude that some probative evidence exists to support a finding that the church
relied upon Johnson’s failure to disclose material facts. Southern States Transp., 774 S.W.2d at
640. Thus, the evidence is legally sufficient to support the jury’s finding on the issue of reliance
on Johnson’s failure to disclose.
3. Injury
      Appellees’ petition alleges,
The church parsonage rightfully belongs to Tabernacle Baptist Church. In addition,
the money (over $66,000) which Defendants diverted from the sales proceeds of the
church facilities rightfully belongs to Tabernacle Baptist Church. . . .Plaintiffs, therefore,
assert a cause of action to recover property and money had and received.

      The court’s fraud questions asked the jury whether Libhart or Johnson committed fraud
against the church or its members. Thus, we will sustain the verdict if any probative evidence
exists showing that the church was injured as a result of the misrepresentations.
      The parties do not dispute that Libhart and Johnson received $66,277.60 of the sanctuary
proceeds for themselves.


 Libhart testified that he attempted to sell the parsonage for $55,000
and agreed that it was worth that much. He later sold it to David and Tracey for $10. The church
voted to loan the sanctuary proceeds to Libhart in exchange for his promise that he would repay
the loan with the parsonage proceeds. Two weeks later, Libhart persuaded the members to forgive
his loan in exchange for his promise that he would donate the parsonage proceeds to certain
charities. Johnson, though present, did not refute these representations.
      Because Libhart failed to sell the parsonage and donate its proceeds to charity, the vote to
absolve his loan is tainted by fraud. See Hendryx, 84 Pac. at 1127. Thus, the loan of the
sanctuary proceeds was not absolved and remained conditioned on its subsequent repayment out
of the proceeds from the sale of the parsonage. Libhart failed to repay the loan. Therefore, the
church suffered pecuniary loss as a result of Johnson’s and his misrepresentations.
      From this we conclude that some probative evidence exists to support a finding that Libhart’s
and Johnson’s misrepresentations caused injury to the church. Southern States Transp., 774
S.W.2d at 640. Thus, the evidence is legally sufficient to support the jury’s finding of injury.
B. Factual Sufficiency
      A factual sufficiency challenge requires us to consider and weigh all the evidence. Dyson v.
Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985); In re King’s Estate, 150 Tex. 662, 664-65, 244
S.W.2d 660, 661 (1951). We will set aside the verdict only if it is “so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.” Dyson, 692 S.W.2d at
457.
      The jury is the sole judge of the witnesses’ credibility and the weight to be accorded their
testimony. Woodlawn Mfg., Inc. v. Robinson, 937 S.W.2d 544, 550 (Tex. App.—Texarkana
1996, writ denied). The jurors may also derive inferences from the evidence and decide between
conflicting inferences. Id. (citing Ramo, Inc. v. English, 500 S.W.2d 461, 467 (Tex. 1973)). A
jury finding based on conflicting evidence and inferences is generally conclusive. Id.
      The evidence set out above is largely undisputed. Contrary evidence rests in Johnson’s
testimony that she did not consider herself an officer of the church, even though she acknowledged
that she was the church’s secretary. Also, just as the jury could infer that Libhart did not intend
to repay the loan and Johnson knew of his intent, the jury could have inferred the contrary.
      We will not substitute our judgment for the jury’s. We cannot say that the jury’s findings that
the church relied upon Libhart’s and Johnson’s misrepresentations and its damages findings are
“so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.” 
Dyson, 692 S.W.2d at 457. Thus, the evidence is factually sufficient to support the jury’s findings
of reliance and injury.
C. Exemplary Damages
      A fraud plaintiff cannot recover exemplary damages absent a finding that the plaintiff
sustained actual damages as a result of the fraud alleged. Twin City Fire Ins. Co. v. Davis, 904
S.W.2d 663, 665 (Tex. 1995); AccuBanc Mortgage Corp. v. Drummonds, 938 S.W.2d 135, 150
(Tex. App.—Fort Worth 1996, no writ).
      We have already found the evidence sufficient to support the jury’s award of actual damages. 
Because the church suffered actual damages, exemplary damages can be awarded. Davis, 904
S.W.2d at 665.
D. Summary
      We have found the evidence legally and factually sufficient to support the jury’s findings that
the church relied upon Libhart’s and Johnson’s misrepresentations. We have also determined that
legally and factually sufficient evidence supports the jury’s findings on damages. Because the
jury’s award of actual damages is supported by sufficient evidence, the award of exemplary
damages is appropriate. We overrule Libhart’s and Johnson’s fifth point.
VII. ATTORNEYS’ FEES
      Libhart and Johnson contend in their sixth point that the court erred in submitting a question
to the jury on the issue of attorneys’ fees because Appellees offered no evidence to support the
awarding of attorneys’ fees under the common fund doctrine.
      The common fund doctrine allows for the recovery of attorney fees in equity where a plaintiff
“has maintained a successful suit for the preservation, protection, or increase of a common fund[,]
or [of] common property.” Knebel v. Capital Nat’l Bank, 518 S.W.2d 795, 799 (Tex. 1974)
(quoting Annotation, Allowance of Attorney’s Fee Against Property or Fund Increased or
Protected by Attorney’s Services, 49 A.L.R. 1149, 1151 (1927) and citing Bosch v. Meeker Coop.
Light & Power Ass’n, 257 Minn. 362, 101 N.W.2d 423 (1960)); accord Crouch v. Tenneco, Inc.,
853 S.W.2d 643, 647 (Tex. App.—Waco 1993, writ denied).
      The doctrine usually has application where a plaintiff’s successful litigation confers “a
substantial benefit on the members of an ascertainable class . . . .” Hall v. Cole, 412 U.S. 1, 5,
93 S. Ct. 1943, 1946, 36 L. Ed. 2d 702 (1973) (quoting Mills v. Electric Auto-Lite Co., 396 U.S.
375, 393-94, 90 S. Ct. 616, 626, 24 L. Ed. 2d 593 (1970)); Knebel, 518 S.W.2d 800. Although,
the term “substantial benefit” usually countenances an ascertainable fund or property recovered
as a result of the litigation, the rationale has been extended to litigation “which corrects or
prevents an abuse which would be prejudicial to the rights and interests” of others. Mills, 396
U.S. at 396, 90 S. Ct. at 627 (quoting Bosch, 101 N.W.2d at 427); accord Hall, 412 U.S. at 5
n.7, 93 S. Ct. at 1946, n.7.
       Although Bosch involved a shareholder’s derivative suit, its reasoning is persuasive. “[I]t
would be unrealistic to deny that derivative suits instituted in good faith to correct or prevent
misconduct of corporate officers and directors may be of substantial benefit. . . . Actions to
prevent such acts may maintain the health of the corporation and raise the standards of fiduciary
relationships.” Bosch, 101 N.W.2d at 426 (emphasis added). The court concluded that legal
actions which correct such abuses confer a “substantial benefit” on the corporation and its
shareholders. Id. at 427.
      Libhart and Johnson argue that no evidence exists to show that an ascertainable class received
a “substantial benefit” as a result of Appellees’ suit. However, the doctrine has been applied in
insurance subrogation cases where the litigation had only two beneficiaries. See Lancer Corp. v.
Murillo, 909 S.W.2d 122, 128 (Tex. App.—San Antonio 1995, no writ) (citing Camden Fire Ins.
Ass’n v. Missouri, K. & T. Ry., 175 S.W. 816, 821 (Tex. Civ. App.—Dallas 1915, no writ)). 
The doctrine has also been applied in a suit brought by individual members on behalf of a fraternal
association to recover property wrongfully transferred by officers of the association. Folts v.
Globe Life Ins. Co., 227 N.W. 455, 456 (Neb. 1929); see also City of Dallas v. Arnett, 762
S.W.2d 942, 954 (Tex. App.—Dallas 1988, writ denied) (class action); Bayliss v. Cernock, 773
S.W.2d 384, 386-87 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (shareholder derivative
suit).
      Appellees brought this suit on behalf of an unincorporated association to recover property and
money fraudulently taken from the association. Appellees successfully obtained a judgment for
the money which Libhart and Johnson fraudulently took and converted. The former church and
its members received a “substantial benefit” because the suit corrected improper conduct of church
officers which defrauded the church of its assets. See Bosch, 101 N.W.2d at 427. 
      The court’s judgment imposed a constructive trust on Libhart’s and Johnson’s property in
Penelope and on the former parsonage. The judgment names Appellees as trustees of these
properties for the church. The judgment requires Appellees to sell the properties in a
commercially reasonable manner and pay the proceeds of these sales, less expenses, to the district
clerk who is ordered to distribute the proceeds thus:
      (1) $957.60 to Appellees as reimbursement for the court costs they incurred;
      (2)  thirty percent to Appellees’ counsel for attorney’s fees; and
      (3)  the remainder to be distributed equally between Arlington Baptist College and the
Christian Law Association.
      Because Appellees successfully prosecuted this suit on behalf of the church and because the
actual damages assessed are awarded on behalf of the church to the named charities after payment
of costs and attorneys’ fees, we conclude that the Appellees’ attorneys’ fees were properly
awarded under the common fund doctrine. We overrule Libhart’s and Johnson’s sixth point.
      We affirm the judgment.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice

Before Chief Justice Davis
            Justice Cummings and
            Justice Vance
Affirmed
Opinion delivered and filed July 16, 1997
Publish